# In the United States Court of Appeals for the Third Circuit

---

INTRA-NATIONAL HOME CARE, LLC, ET AL.,
*Plaintiffs-Appellants*,

v.

UNITED STATES DEPARTMENT OF LABOR, ET AL.,
*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case Nos. 2:20-cv-01545 &
2:20-cv-01773
The Honorable W. Scott Hardy

---

## BRIEF OF APPELLANTS

---

BRUCE C. FOX
OBERMAYER, REBMAN,
   MAXWELL & HIPPEL LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
(412) 566-1500
bruce.fox@obermayer.com

*Counsel for Plaintiffs-Appellants*

JONATHAN BERRY
MICHAEL B. BUSCHBACHER
BOYDEN GRAY & ASSOCIATES, PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
(202) 955-0620
buschbacher@boydengrayassociates.com

*Counsel for Intra-National Home Care,
LLC and Americare Home Healthcare
Services, LLC*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and L.A.R. 26.1.0, Plaintiffs-Appellants Agewell Home Helpers, Inc. *dba* Agewell Caregiver Service; Americare Home Healthcare Services, LLC; and Intra-National Home Care, LLC hereby make the following disclosures:

**Agewell Home Helpers, Inc.** has no parent corporation, and no publicly held corporation owns its stock. No publicly held corporation that is not a party to this proceeding has a financial interest in this proceeding's outcome.

**Americare Home Healthcare Services, LLC** has no parent corporation, and no publicly held corporation owns its stock. No publicly held corporation that is not a party to this proceeding has a financial interest in this proceeding's outcome.

**Intra-National Home Care, LLC** has no parent corporation, and no publicly held corporation owns its stock. No publicly held corporation that is not a party to this proceeding has a financial interest in this proceeding's outcome.

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiffs-Appellants ("Plaintiffs") respectfully request oral argument. This appeal turns on the issue of when a "right of action" for pre-enforcement review under the Administrative Procedure Act "accrues" for the purposes of 28 U.S.C. § 2401(a). This question has divided the circuits and caused considerable confusion among lower courts, including in this circuit. Counsel's responses to inquiries from the Court may aid the Court in its resolution of the important statutory issue raised by this appeal. *See* Fed. R. App. P. 34(a)(1).

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF CONTENTS............................................................................... iii

TABLE OF CITATIONS ................................................................................ v

INTRODUCTION ........................................................................................ 1

JURISDICTIONAL STATEMENT ................................................................. 5

STANDARD OF REVIEW ............................................................................ 5

STATEMENT OF ISSUE............................................................................... 5

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................ 6

PERTINENT STATUTES.............................................................................. 7

STATEMENT OF THE CASE....................................................................... 7

    A.    Statutory Background ................................................................ 7

    B.    Regulatory Background ............................................................. 7

    C.    Procedural Background............................................................. 10

    D.    The Decision Below................................................................. 10

SUMMARY OF ARGUMENT ....................................................................... 13

ARGUMENT .............................................................................................. 15

I.    A "Right of Action" "Accrues" Under Section 2401(a) When the Plaintiff First Can Bring Suit or Discovers its Injury, Not Before ..... 16

    A.    The Distinction Between Statutes of Limitation and Statutes of Repose ..................................................................................... 16

B.      Section 2401(a) is a Statute of Limitation, not a Statute of Repose ...................................................................................18

C.      The Plain Meaning of Section 2401(a) Applies to Pre-Enforcement Review Claims Brought Under the APA ............19

II.     The District Court Erred in Dismissing Plaintiffs' Claims .................24

A.      Plaintiffs Americare and Agewell Brought Suit Within Six Years of the Earliest Possible Date That Their Claims Accrued under Section 2401(a) ...............................................................24

B.      Plaintiffs Suffered Additional "Legal Wrongs" Less Than Six Years Before They Brought Suit, and Their Claims are Therefore Timely .....................................................................25

C.      The District Court's Ruling Was—at the Very Least—Premature ................................................................................28

CONCLUSION ...................................................................................................28

CERTIFICATE OF COMPLIANCE ...................................................................29

CERTIFICATE OF SERVICE ............................................................................30

CERTIFICATE OF VIRUS SCAN .....................................................................31

CERTIFICATE OF BAR MEMBERSHIP, PRIVACY REDACTIONS, AND IDENTICAL ELECTRONIC AND HARD COPY VERSIONS ...........................32

iv

# TABLE OF CITATIONS

**Cases**

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) ...........................................14

*Alabama v. PCI Gaming Auth.*, 801 F.3d 1278 (11th Cir. 2015) ...........................14

*Andersen v. U.S. Department of Housing and Urban Development*, 678 F.3d 626
  (8th Cir. 2012) ...........................................................................................18

*Bowen v. Michigan Acad. of Family Physicians*, 476 U. S. 667 (1986) ................22

*Crown Coat Front Co. v. United States*, 386 U.S. 503 (1967).....................2, 15, 17

*CTS Corp. v. Waldburger*, 573 U.S. 1 (2014) ......................................................17

*Custin v. Wirths*, Civ. No. 12-910 (KM), 2014 WL 356254
  (D.N.J. Jan. 31, 2014) ................................................................................20

*Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d
  199 (3d Cir. 2008) .......................................................................................16

*Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018)...................................8

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) .....22

*Herr v. U.S. Forest Serv.*, 803 F.3d 809
  (6th Cir. 2015) ......................................... 4, 13–14, 16, 18–21, 23–27

*Home Care Ass'n of Am. v. Weil*, 76 F. Supp.3d 138 (D.D.C. 2014)........................8

*Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015).........................8

*Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751 (8th Cir. 2009) ......2, 23

*Kach v. Hose*, 589 F.3d 626 (3d Cir. 2009).........................................................17

*Lake v. Arnold*, 232 F.3d 360 (3d Cir. 2000)..........................................................5

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) ..............................7

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ............................................2, 18

*Paucar v. Att'y Gen. of U.S.*, 545 F. App'x 121 (3d Cir. 2013)........2, 12, 18, 19, 24

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019)................................................................................................22

*Pennsylvania Dep't of Pub. Welfare v. HHS*, 101 F.3d 939 (3d Cir. 1996) ........................................................................3, 12, 19, 23–24

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) ........................15, 20

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ....................................................27

*Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337 (3d Cir. 2021) ........................................................................................16

*Spannaus v. U.S. Dep't of Just.*, 824 F.2d 52 (D.C. Cir. 1987)..................13, 19, 24

*Stone v. Troy Constr., LLC*, 935 F.3d 141 (3d Cir. 2019) ...................................4, 26

*United States v. Sams*, 521 F.2d 421 (3d Cir. 1975)..........................2, 12, 17, 19, 23

*Utility Air Regulation Group v. EPA*, 573 U.S. 302 (2014) ....................................8

*Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011)........................21

*West Virginia v. EPA*, 142 S. Ct. 2587 (2022)........................................................8

*Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 139 S. Ct. 361 (2018) .............14

*Wind River Mining Corp. v. United States*, 946 F.2d 710 (9th Cir. 1991)........22–23

**Statutes:**

5 U.S.C. § 702............................................................................2, 4, 18, 24

5 U.S.C. § 704..................................................................................2, 18

5 U.S.C. § 706....................................................................................1, 4

28 U.S.C. § 1291....................................................................................5

28 U.S.C. § 1331 ................................................................4

28 U.S.C. § 2401 ...............................................2, 12, 14, 17

29 U.S.C. § 213 ................................................................1

**Rules and Regulations**

40 Fed. Reg. 7,404 (Feb. 20, 1975) .........................................6

78 Fed. Reg. 60,454 (Oct. 1, 2013) .........................................7

**Other Authorities**

*Statute of Limitations*, Black's Law Dictionary (10th ed. 2014) ...........16

*Accrue,* Black's Law Dictionary (10th ed. 2014) .................16

*Accrue*, American Heritage Dictionary (5th ed. 2022) ..........................16

*Department of Labor Initiative Finds Violations in 80% of Care Industry In-vestigations*, U.S. Department of Labor (Nov. 16, 2022), https://www.dol.gov/newsroom/releases/whd/whd20221116 ..............8–9

John Kendrick, *(Un)limiting Administrative Review:* Wind River, *Section 2401(a), and the Right to Challenge Federal Agencies*, 103 Va. L. Rev. 157 (2017) ........................................................15, 19, 23

H.G. Wood, *A Treatise on the Limitation of Actions at Law and in Equity* (1883) .........................................................19

# INTRODUCTION

The Fair Labor Standards Act ("FLSA") includes a blanket overtime exemption for workers providing companionship and live-in care. *See* 29 U.S.C. §§ 213(a)(15), (b)(21). This case challenges a rule published by the Department of Labor in 2013 ("the 2013 Rule") that purports to rewrite these exemptions to apply only to employers who personally receive such care. Plaintiffs-Appellants Intra-National Home Care, LLC ("Intra-National"), Americare Home Healthcare Services, LLC ("Americare"), and Agewell Home Helpers, Inc. ("Agewell") (collectively, "Plaintiffs") are home health care agencies that are now deprived of these statutory exemptions and face potentially crippling overtime liability as a result.

Plaintiffs brought this suit for pre-enforcement review of the 2013 Rule under the Administrative Procedure Act ("APA") and the Declaratory Judgment Act shortly after the Department of Labor began investigating them in 2020 for potential overtime violations premised on the 2013 Rule. This suit asks that the 2013 Rule be "held unlawful and set aside" because it is contrary to law and arbitrary and capricious. 5 U.S.C. § 706.

The merits of that challenge, however, are not currently before this Court. Rather, this appeal concerns the threshold issue of whether this suit is time-barred. It is not.

The statute of limitations invoked by the government, 28 U.S.C. § 2401(a), provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." Accrual under Section 2401(a) occurs when a potential plaintiff's "claim or right to bring a civil action against the United States matures," *Crown Coat Front Co. v. United States*, 386 U.S. 503, 514 (1967), *i.e.*, "when all the events have occurred which [1] fix the alleged liability of the United States *and* [2] entitle the claimant to institute an action," *United States v. Sams*, 521 F.2d 421, 429 (3d Cir. 1975) (emphasis and numeration added).

To be "entitle[d] … to institute an action" for pre-enforcement review under the APA, a plaintiff must satisfy "two separate requirements": (1) the challenge must be against "final agency action"; and (2) the plaintiff must face a "legal wrong" or be otherwise "adversely affected or aggrieved" because of that action. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882–83 (1990) (quoting 5 U.S.C. §§ 702, 704). As this Court has acknowledged, while these two elements often travel together, they are distinct and can happen years apart if the plaintiff is not "directly affected by" a rule until after its publication. *Paucar v. Att'y Gen. of U.S.*, 545 F. App'x 121, 124 (3d Cir. 2013) (citing *Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 759 (8th Cir. 2009)).

The district court rejected this principle, claiming instead that binding circuit precedent provided that "the six-year limitations period applicable to facial challenges to a regulation under the APA begins to run upon promulgation of the regulation being challenged," regardless of whether the plaintiff could have sued at that time. Order at 12 (JA-018). This was incorrect. The sole Third Circuit case the district court cited for this, *Pennsylvania Dep't of Pub. Welfare v. HHS*, 101 F.3d 939, 944–45 (3d Cir. 1996), in fact points in the opposite direction. That decision considered an APA challenge to an agency rule brought more than six years after its publication. Rather than dismissing the challenge out of hand, as the court below did, this Court concluded that it *could* consider the question of when the statute of limitations commenced by examining when the claim became ripe. *Id.* And even though the plaintiff in that case had waived its "ripeness challenge," the Court nevertheless performed a detailed analysis before concluding that the challenge was too late because the plaintiff's claim had ripened when the rule in question was published. *Id.*

This principle requires reversal here. Plaintiffs Americare and Agewell did not even exist until 2015 and 2016, respectively, and the dates of their creation are the earliest possible moments that their APA claims could have ripened. Because Americare and Agewell each filed suit within six years of the earliest point when their claims became ripe, their claims are timely.

Second, and independently, all three Plaintiffs' claims are timely because new "rights of action" have accrued to them since the rule was published. Prospective liabilities threatened by a new rule are not the *only* kinds of "legal wrongs" or "adverse effects" that can give rise to a right of action under the APA. 5 U.S.C. § 702 (cleaned up). Rather, "[d]ifferent legal wrongs give rise to different rights of action ... even if the different legal wrongs stem from the same" underlying rule. *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 820 (6th Cir. 2015) (Sutton, J.).

Here, new and "different legal wrongs" to Plaintiffs occurred less than six years before they brought suit. This is because, under the FLSA, a "new and separate cause of action for unpaid overtime wages accrues" to the government—and against an employer—on "each payday where" the employer allegedly "failed to pay its employees proper wages." *Stone v. Troy Constr., LLC*, 935 F.3d 141, 154 (3d Cir. 2019) (cleaned up). Much like in *Herr*, the government "threatened [legal] action against" Plaintiffs based on such new potential liabilities. 803 F.3d at 822. This created new rights of action. Because Plaintiffs filed suit less than six years after these new rights of action accrued to them, their claims are timely.

\* \* \*

The district court's order of dismissal should therefore be reversed as to all three Plaintiffs.

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction over Plaintiffs' 5 U.S.C. § 706(2) claims pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291, after Plaintiffs filed a timely notice of appeal on August 31, 2022, from the district court's July 20, 2022 final order dismissing their Amended Complaint with prejudice.

## STANDARD OF REVIEW

This Court's review of the district court's order granting a motion to dismiss on statute of limitations grounds is plenary. *See Lake v. Arnold*, 232 F.3d 360, 365 (3d Cir. 2000). In determining whether a district court's dismissal of a complaint under Rule 12(b)(6) was proper, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

## STATEMENT OF ISSUE

Whether the district court erred in holding Plaintiffs' pre-enforcement challenges to the 2013 Rule to be untimely.

This issue was addressed in the Opinion at 9–13 (JA-015–019).

# STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously. Plaintiffs are aware of several ongoing enforcement actions brought by the Department of Labor that involve similar merits issues to those undergirding this suit: actions brought against Plaintiffs Intra-National, *Walsh v. Intra-National Home Care LLC et al.,* No. 2:21-cv-1391, and Agewell, *Walsh v. Agewell Home Helpers, Inc. et al.,* No. 2:21-cv-108, in the United States District Court for the Western District of Pennsylvania; an action against Plaintiff Americare in the United States District Court for the Southern District of Ohio, *Department of Labor v. Americare Healthcare Services, LLC et al.*, No. 2:21-cv-5076.; an enforcement action brought against Massonti Homecare LLC in the United States District Court for the Eastern District of Missouri, which was resolved by a consent decree on March 29, 2022, *Scalia v. Massonti Homecare LLC et al.,* No. 42-cv-988; and an enforcement action brought against Ideal Homecare Agency LLC in the United States District Court for the Western District of Pennsylvania, that remains ongoing, *Walsh v. Ideal Homecare Agency LLC et al.,* No. 2:20-cv-732.

The validity of the Department of Labor's 2013 rule limiting companionship and live-in exemptions, 78 Fed. Reg. 60,454 (Oct. 1, 2013), was considered in *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015).

# PERTINENT STATUTES

Pertinent statutory provisions are reproduced in the addendum.

# STATEMENT OF THE CASE

## A. Statutory Background

The FLSA requires that employers pay "covered employees" a minimum wage and overtime compensation. 29 U.S.C. §§ 206(a)(1)(C), 207(a)(1). Congress expanded the scope of the FLSA in 1974 to include workers employed "in domestic service." 29 U.S.C. §§ 206(f), 207(l). Nevertheless, the 1974 amendments exempted employees providing "companionship services" from both the minimum wage and overtime requirements, *id.* § 213(a)(15), and "live-in" employees from overtime requirements, *id.* § 213(b)(21).

## B. Regulatory Background

In 1975, the Department of Labor promulgated a rule that applied a plain-text interpretation to the companionship and live-in exemptions, stating that they applied to all such employees, including those "who are employed by an employer or agency other than the family or household using the services." 40 Fed. Reg. 7404, 7407 (Feb. 20, 1975). Some three decades after its promulgation, the validity of this

interpretation was challenged and was ultimately upheld by the Supreme Court in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007).

Not long after *Coke*, however, the Labor Department reversed course and issued the 2013 Rule, which purports to make both the companionship services and live-in exemptions entirely unavailable to third-party agencies. 78 Fed. Reg. 60,454 (Oct. 1, 2013). The Department defended this new interpretation under the principles of *Chevron* and *Brand-X* deference, asserting its view that its earlier approach conflicted with Congressional intent and with the "general principle that … exemptions are narrowly interpreted and limited in application to those who clearly are within the terms and spirit of the exemption." 78 Fed. Reg. at 60,481–82.

The 2013 Rule created a profound regulatory dysfunctionality. Many homecare services are federally funded through state Medicaid Waiver Programs. *See* Amended Complaint ¶ 10 (JA-041). And third-party agencies, like Plaintiffs, have little to no control over care workers' hours, which are set by service coordinators employed by other private entities that work with the states. *Id.* at ¶¶ 44-52 (JA-048–50). Thus, unlike garden-variety employers, home care agencies cannot avoid overtime requirements by, *e.g.*, reducing employees' hours of work or hiring more workers. In response to comments identifying this dysfunctionality, the Department suggested that states could modify their policies to address these issues by allowing

for reimbursements for overtime pay. *Id.* at ¶ 84 (JA-056). But many states—including the states where Plaintiffs operate—have not. *Id.* at ¶ 91 (JA-058).

The 2013 Rule survived a challenge brought by a group of homecare organizations (though none of the Plaintiffs here) shortly after its promulgation. *See Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1088 (D.C. Cir. 2015). *But see Home Care Ass'n of Am. v. Weil*, 76 F. Supp.3d 138 (D.D.C. 2014) (district court decision reaching the opposite conclusion).

That decision was dubious at the time and became indefensible following the Supreme Court's 2018 rejection of the "narrow" construction principle for FLSA exemptions in *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018), and its recent holding that agencies must have "'clear congressional authorization'" (that is, "something more than a merely plausible textual basis for the agency action") before they can transform an entire industry via regulation. *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022) (quoting *Utility Air Regulation Group v. EPA*, 573 U.S. 302, 324 (2014)).

Despite these developments, the Labor Department has not revisited the 2013 Rule. Instead, it has embarked on an aggressive, multi-district enforcement "initiative" largely premised on the 2013 Rule's anti-textual interpretation of the FLSA. *See Department of Labor Initiative Finds Violations in 80% of Care Industry Investigations*, U.S. Department of Labor (Nov. 16, 2022), https://www.dol.gov/

newsroom/releases/whd/whd20221116. "Since its 2021 launch, the initiative has completed more than 1,600 investigations" and has already extracted nearly $30 million from "residential care, nursing facilities, home health services and other care-focused industry employers." *Id.*

## C. Procedural Background

Plaintiffs are third-party home care agencies that process service and payroll documents for care workers who provide in-home companionship and live-in assistance services to eligible individuals under federally funded Medicaid Waiver Programs administered by state governments. Amended Complaint ¶¶ 24–39 (JA-044–47).  Plaintiffs are small businesses founded by ethnically Nepalese entrepreneurs from the Kingdom of Bhutan who were resettled in the United States after being exiled by the Bhutanese government. *Id.* at ¶¶ 25, 34 (JA-044, JA–047) Intra-National and Americare provide services in Pennsylvania, Ohio, Michigan, and Iowa; Agewell provides services in Pennsylvania. *Id.* at ¶¶ 1–2 (JA-039–40).

Care providers and care recipients served by Plaintiffs are Nepalese-Americans who reside in the states Plaintiffs operate in and who also came to the United States as refugees. *Id.* at ¶¶ 26–28 (JA-044–45). Plaintiffs' services ensure that elderly and infirm members of this community can access federal Medicaid support to

afford in-home care, which is often provided by family members or others within the community who speak their language and understand their culture. *Id.*

Plaintiffs ran their businesses unmolested until 2020, when the Department of Labor began investigating all three for potential overtime violations premised on the 2013 Rule. In response, Plaintiffs Intra-National and Americare initiated this matter October 9, 2020, by filing a complaint seeking pre-enforcement review of the 2013 Rule under the APA and the Declaratory Judgment Act. Agewell subsequently filed a complaint seeking the same relief on November 13, 2020, which the district court consolidated with the first action.

The Labor Department moved to dismiss the pre-enforcement challenge as untimely under the six-year statute of limitations codified at 28 U.S.C. § 2401(a) and brought enforcement actions against all three Plaintiffs. *See Walsh v. Intra-National Home Care LLC et al.,* No. 2:21-cv-1391 (W.D. Pa.); *Walsh v. Agewell Home Helpers, Inc. et al.,* No. 2:21-cv-108 (W.D. Pa.); *Department of Labor v. Americare Healthcare Services, LLC et al.*, No. 2:21-cv-5076 (S.D. Oh.).

**D. The Decision Below**

On July 20, 2022, the district court issued an order granting the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiffs' claims are untimely under Section 2401(a). The court reasoned that the limitations period "applicable to facial challenges to a regulation" begins to run on the date a

challenged regulation is promulgated. Order at 12 (JA-018). Accordingly, because the 2013 Rule was promulgated on October 1, 2013, and Plaintiffs' initial complaints were not filed until October 9 and November 13, 2020, the court held that their claims were time-barred. *Id.* (JA-018).

In making this determination, the district court rejected Plaintiffs' contention that a "right of action" under Section 2401(a) cannot accrue before a party "can file suit and obtain relief." *Id.* at 11 (JA-017).[1] While the court appeared to concede that this is the usual way in which a statute of limitation operates, it concluded that applying this plain-language approach to "facial" pre-enforcement challenges "would vitiate the statute of limitations here." *Id.* at 11-12 (JA-017-018). It asserted, rather, that Plaintiffs may raise their APA challenges only in an "as-applied" context, by which the court appeared to mean in the context of challenges to the rule's validity raised "as a defense to [the Department of Labor's] currently pending enforcement actions." *Id.* at 12-13 (JA-018-019).

Plaintiffs then brought this appeal because they believe that this straightforward and first-filed APA pre-enforcement suit, unencumbered by the complications

---

[1] The Court also rejected Plaintiffs' alternative argument that Section 2401(a) does not apply to APA challenges seeking only injunctive relief. Order at 10–11 (JA-016–17). Plaintiffs believe that the Court erred in this determination, but have elected not to focus on it here because it is a complicated issue of first impression and is unnecessary to the resolution of this appeal.

of thousands of alleged overtime violations at issue in the enforcement cases, is the best vehicle for them to explain why the 2013 Rule is invalid and must be vacated.[2]

## SUMMARY OF ARGUMENT

The District Court erred in dismissing Plaintiffs' claims as untimely.

1.     The six-year limitations period under Section 2401(a) begins to run when a potential plaintiff's claim "accrues"; that is, "when all the events have occurred which [1] fix the alleged liability of the United States and [2] entitle the claimant to institute an action." *Sams*, 521 F.2d at 429 (numeration added). These two elements are not necessarily coterminous, and can happen at different points if the plaintiff is not "directly affected by" a rule until after its publication. *Paucar v. Att'y Gen. of U.S.*, 545 F. App'x at 124; *cf. Pennsylvania Department of Pub. Welfare*, 101 F.3d at 944–45.

The district court's conclusion that "a right of action under the APA accrues upon final agency action regardless of whether that action aggrieved the plaintiff" cannot be squared with these precedents and "contradicts the text of the statute and Supreme Court precedent to boot." *Herr*, 803 F.3d at 819.

---

[2] Plaintiffs also appealed to prevent any estoppel issues (which the government has already raised in its enforcement action against Intra-National). Brief in Support of Motion to Dismiss, ECF No. 45, *Walsh v. Intra-National Home Care LLC et al.*, No. 2:21-cv-1391 (W.D. Pa.).

2.     Plaintiffs' claims are timely. For Plaintiffs Americare and Agewell, the earliest they could have been "entitle[d] … to institute an action" is when they were created in 2015 and 2016, respectively. Because they brought suit within six years of when they first came into existence, their claims cannot be barred by Section 2401(a). *See Spannaus v. U.S. Dep't of Just.*, 824 F.2d 52, 56 n.3 (D.C. Cir. 1987) ("That a statute of limitations cannot begin to run against a plaintiff *before* the plaintiff can maintain a suit in court seems virtually axiomatic.").

Further, the claims of all three Plaintiffs, including Intra-National, are timely for a separate and independent reason. As Judge Sutton explained in *Herr*, under the APA, "[d]ifferent legal wrongs give rise to different rights of action … even if the different legal wrongs stem from the same order." 803 F.3d at 820 (citations omitted). While the issuance of the 2013 Rule may have given Intra-National a cause of action, new "legal wrongs" against Plaintiffs have subsequently occurred that provide new and independent "right[s] of action." Specifically, under the 2013 Rule, every time a direct care worker works overtime without the proper rate of compensation, a new potential liability attaches to Plaintiffs. The government's new potential claims of liability against Plaintiffs constitute new and "different legal wrong[s]," giving rise to new and "different rights of action," albeit ones that "stem from the same" rule. *Herr*, 803 F.3d at 820. Much like the plaintiffs in *Herr*, these

new "rights of action" accrued within the past six years, and Plaintiffs' claims are therefore timely.

*     *     *

The decision below should be reversed and remanded so that Plaintiffs can litigate the merits of their challenge to the 2013 Rule.

## ARGUMENT

The "Administrative Procedure Act creates a basic presumption of judicial review for one suffering legal wrong because of agency action." *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 139 S.Ct. 361, 370 (2018) (internal quotations omitted). Under the Supreme Court's landmark decision in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), litigants need not "bet the farm" by waiting to raise invalidity as a defense to a government enforcement action, but can bring a *pre*-enforcement challenge to final agency action under the Declaratory Judgment Act and the APA. Under Section 2401(a), the time for seeking such pre-enforcement review begins when the plaintiff's "right of action first accrues," *i.e.*, the point when the plaintiff can pursue its claim in court or learns of its injury. 28 U.S.C. § 2401(a). Because Plaintiffs brought their claims within six years of when their respective "right[s] of action first accrue[d]," their claims are timely, and the district court's contrary conclusion must be reversed.

## I. A "Right of Action" "Accrues" Under Section 2401(a) When the Plaintiff First Can Bring Suit or Discovers its Injury, Not Before.

As the Supreme Court has made clear, a "right of action" cannot "accrue" in the abstract—it "accrues" *to* someone when their "claim or right to bring a civil action against the United States matures," *Crown Coat Front Co.*, 386 U.S. at 514, and they "can file suit and obtain relief," *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014). "This understanding of accrual is almost universally accepted throughout the law, and has been for over a century." John Kendrick, *(Un)limiting Administrative Review:* Wind River*, Section 2401(a), and the Right to Challenge Federal Agencies*, 103 Va. L. Rev. 157, 158 (2017). By rejecting this fundamental principle and instead tying accrual solely to the date of final agency action, the district court improperly rewrote Section 2401(a).

### A. The Distinction Between Statutes of Limitation and Statutes of Repose.

At the outset, it is important to distinguish between statutes of limitation and statutes of repose. While both impose time limits, they work in different ways to serve different purposes.

***Statutes of Limitation***. A "statute of limitation" is a "a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." *Statute of Limitations*, Black's Law Dictionary (10th ed. 2014). "Accrue," in turn, means "to come into existence as an

enforceable claim or right; to arise." *Accrue*, Black's Law Dictionary (10th ed. 2014). Rights "accrue" when they "come to someone or something as a gain, addition or increment." *Accrue,* American Heritage Dictionary (5th ed. 2022). Thus, when a "right of action" accrues, it "becomes a piece of intangible personal property" belonging to the potential plaintiff. *Herr*, 803 F.3d at 821 (internal quotation marks omitted).

Accordingly, a statute of limitations begins to run either (1) at "the moment the potential plaintiff has a 'complete and present cause of action'" and could sue; or, more liberally, (2) "when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199, 209 (3d Cir. 2008). In both scenarios, the court looks to the *plaintiff's* situation to see when their "right of action" first came into existence. *Id.*

**Statutes of Repose**. "Unlike statutes of limitations, which do not begin to run typically until all elements of the claim have occurred, 'statutes of repose start upon the occurrence of a specific event and may expire before a plaintiff discovers he has been wronged or even before damages have been suffered at all.'" *Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 346 (3d Cir. 2021). The limit imposed by a statute of repose thus "is measured not from the date on which the claim *accrues* but instead from the date of the last culpable act or omission

of the defendant." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) (emphasis added) *superseded by statute on other grounds, see In re Dow Corning Corp.*, 778 F.3d 545, 553 n.2 (6th Cir. 2015).

### B. Section 2401(a) is a Statute of Limitation, not a Statute of Repose.

Section 2401(a) imposes an accrual-based framework: "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). Thus, as the Supreme Court and this Court have recognized, that provision is—and functions as—a statute of limitation. A "claim or right to bring a civil action against the United States" under Section 2401(a) "accrues" at the point when it is legally actionable, when it "matures." *Crown Coat Front Co.*, 386 U.S. at 514. This happens "when all the events have occurred which [1] fix the alleged liability of the United States *and* [2] entitle the claimant to institute an action." *Sams*, 521 F.2d at 429 (emphasis and numeration added); *accord Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) ("Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." (internal quotation marks and citation omitted)).

Although these two elements can be satisfied at the same time, they are distinct. Thus, this Court has recognized that a claim can accrue years after a rule is published in circumstances where the plaintiff is not "directly affected by" a rule

until some later date. *Paucar*, 545 F. App'x at 124; *accord Andersen v. U.S. Department of Housing and Urban Development*, 678 F.3d 626, 629 (8th Cir. 2012) ("For purposes of § 2401(a) a claim accrues 'when the plaintiff either knew, or in the exercise of reasonable diligence should have known, that [he or she] had a claim.'" (citation omitted; brackets in original)); *Herr*, 803 F.3d at 818.

## C. The Plain Meaning of Section 2401(a) Applies to Pre-Enforcement Review Claims Brought Under the APA.

To be "entitle[d] ... to institute an action" for pre-enforcement review under the APA, a plaintiff must satisfy "two separate requirements": (1) the challenge must be against "final agency action"; and (2) the plaintiff must face a "legal wrong" or be otherwise "adversely affected or aggrieved" because of that action. *Lujan*, 497 U.S. at 882–83 (quoting 5 U.S.C. §§ 702, 704). "Once the challenged agency action becomes final and invades a party's legally protected interest, the party's right to redress that injury under the APA accrues, and § 2401(a)'s six-year clock starts ticking." *Herr*, 803 F.3d at 818–19 (citation omitted); *see also Spannaus*, 824 F.2d at 57 n.3; *Paucar*, 545 F. App'x at 124.[3]

---

[3] There is ample historical support for this approach. From the time that the first version of Section 2401(a) was passed in 1887 until today, a "claim" or "right of action" has always been understood as "accruing" to a particular plaintiff at the point

This approach is mandated by circuit precedent. This Court's holding in *United States v. Sams* is unequivocal: a "right of action" under Section 2401(a) cannot "accrue[]" before the plaintiff is "entitle[ed] … to institute an action." 521 F.2d at 429. The sole Third Circuit case the district court cited for its contrary interpretation is, in reality, perfectly consistent with *Sams*. That case, *Pennsylvania Dep't of Pub. Welfare v. HHS*, considered a pre-enforcement APA suit brought more than six years after publication of the rule in question. The Court concluded that it *could* consider the question of when the statute of limitations commenced by examining when the claim became ripe, *i.e.*, by looking at when the plaintiff could first have brought a lawsuit. 101 F.3d at 944–45. *Pennsylvania Department of Public Welfare* is thus entirely consistent with *Sams* and *Paucar*, and wholly inconsistent with the district court's decision.

---

when the plaintiff could actually bring suit. For example, in his 1883 treatise on limitations, legal commentator H.G. Wood assembled an impressive list of English and American cases, all of which uniformly "refus[ed] to find that a plaintiff's cause of action had accrued before he had one." Kendrick, *supra*, at 181 (citing H.G. Wood, *A Treatise on the Limitation of Actions at Law and in Equity* (1883)). This rule applied across the board, including in suits against government officials for violations of their public duties. *See id*. "The analogy to modern administrative claims is apparent. An agency might breach its public duty to follow proper procedures, but until a specific plaintiff suffers 'some actual inconvenience,' his claim against the agency has not accrued and the statute of limitations should not begin to run against him." *Id.*

To be sure, the other case that the district court cited—a non-binding district court opinion—does state that "the right of action first accrue[s] in the context of a facial challenge to a regulation" at the time "when the agency publishes the regulation in the Federal Register." *Custin v. Wirths*, Civ. No. 12-910 (KM), 2014 WL 356254, at *9 (D.N.J. Jan. 31, 2014). And there are some other decisions (though none from the Third Circuit) that have made similar pronouncements. *See Herr*, 803 F.3d at 819–20 (collecting cases). "But these cases show why we don't read precedents like statutes. These cases all involved settings in which the right of action happened to accrue at the same time that final agency action occurred, because the plaintiff either became aggrieved at that time or had already been injured." *Id.* That is not the situation here.

To reach a different conclusion, the district court had to transform Section 2401(a) into a statute of repose, such that the limitations period began to run when the regulation was promulgated regardless of when any particular resultant legal harm occurred. Thus, while the court appeared to acknowledge that, generally, a claim cannot "accrue pursuant to 28 U.S.C. § 2401" before the plaintiff "'can file suit and obtain relief," Order at 11 (quoting *Petrella*, 572 U.S. at 670) (cleaned up) (JA-017), it refused to apply this bedrock principle to Plaintiffs' claims, asserting that doing so would "vitiate the statute of limitations," *id.* at 12 (JA-018). The court

asserted that this approach was necessary to avoid "conflat[ing] facial and as-applied challenges to administrative regulations." *Id.* at 11 (JA-017).

There is no justification for this. The notion that a "claim" or "right of action" can "accrue" in some abstract sense is simply erroneous. Nor is the distinction between "facial" (*i.e.*, pre-enforcement) and "as applied" (*i.e.*, defensive) APA challenges of any relevance to when a "right of action" for pre-enforcement review "accrues." Certainly, a party who previously suffered a legal wrong can challenge a rule's validity in an enforcement action even if more than six years have elapsed since a rule's promulgation and its initial injury. *See, e.g.*, *Herr*, 803 F.3d at 822 ("Does anyone really think that the Herrs would not be allowed to challenge the Forest Service's administrative authority to put them in jail for six months or fine them $5,000 based on its interpretation of this statute?"). But it in no way follows that the limitations period for a pre-enforcement challenge necessarily and only begins to run upon promulgation of the challenged regulation. Order at 12 (JA-018).

Moreover, the scope of judicial review of an agency rulemaking under the APA is always the same, regardless of whether the issue arises in a declaratory judgement action or as a defense. *Cf. Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 262 (2011) (Kennedy, J., concurring) (pre-enforcement review is "nothing more than the preemptive assertion in equity of a defense that would otherwise have been available in … enforcement proceedings at law."). In both

situations, judicial review considers the purely legal question of a rule's validity based on the law and the closed universe of the agency's action and record of decision. *See, e.g., PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2066–67 (2019) (Kavanaugh, J., concurring).

There is nothing in Section 2401(a) or the APA that suggests that Plaintiffs should be confined to defensive review once six years have passed from the time that the rule in question was published. On the contrary, the Supreme Court does not "consider" the availability of defense review to constitute even "a meaningful avenue of relief." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,* 561 U.S. 477, 490–91 (2010). And courts may not preclude judicial review under the APA unless "there is persuasive reason to believe" that Congress intended that outcome. *Bowen v. Michigan Acad. of Family Physicians*, 476 U. S. 667, 670 (1986) (internal quotation marks omitted). No persuasive reason exists here—on the contrary, the plain text of Section 2401(a) and binding Supreme Court and Circuit precedent prohibit the district court's judicial rewriting of that statute.

Finally, Plaintiffs note that some courts have stated that Section 2401(a) should operate as a statute of repose in the limited circumstance of "policy-based" or "procedural violation" challenges under the APA. *See, e.g.*, *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991). While less extreme than the district court's ruling, the *Wind River* approach is incorrect for many of the same

reasons. *See* Kendrick, *supra*, at 175. A circuit split (apparently unacknowledged) exists between the courts that follow *Wind River* and those—like this Court—that do not and that have held that Section 2401(a) operates according to its plain text in "procedural" APA challenges. *Compare Wind River Mining Corp.*, 946 F.2d at 715; *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1292 (11th Cir. 2015), *with Sams,* 521 F.2d at 429; *Pennsylvania Department of Pub. Welfare*, 101 F.3d at 944–45; *Kimbell,* 558 F.3d at 759.

In any event, a partial reversal of the district court would be required here even under *Wind River* because Count I of the operative complaint alleges a purely substantive claim against the 2013 Rule, namely, that it contrary to the plain text of the FLSA. Affirming the district court would therefore deepen the existing conflict from a two-way circuit split into a three-way split.

## II.    The District Court Erred in Dismissing Plaintiffs' Claims.

### A. Plaintiffs Americare and Agewell Brought Suit Within Six Years of the Earliest Possible Date That Their Claims Accrued under Section 2401(a).

Americare and Agewell's claims were brought within six years of when they came into existence, the earliest possible moment that they could have suffered any "legal wrong" and the earliest time that they could have brought a challenge to the 2013 Rule. Their claims are therefore timely. *See Sams*, 521 F.2d at 429; *Herr*, 803 F.3d at 820; *Spannaus*, 824 F.2d at 57 & 57 n.3. *Cf. Pennsylvania Dep't of Pub.*

*Welfare*, 101 F.3d at 944–45; *Paucar*, 545 Fed. App'x at 124 (limitations period under Section 2401(a) for administrative challenges begins "when the plaintiff either knew, or in the exercise of reasonable diligence should have known, that he or she had a claim.") (quoting *Kimbell,* 558 F.3d at 759 (brackets omitted)).

### B. Plaintiffs Suffered Additional "Legal Wrongs" Less Than Six Years Before They Brought Suit, and Their Claims are Therefore Timely.

All three Plaintiffs' claims, including Intra-National's, are timely for a second and independent reason. Under the APA, imminent liabilities imposed by a new rule are not the only kinds of "legal wrong[s]" that can give rise to a cause of action. 5 U.S.C. § 702. As the Labor Department's investigation and enforcement actions demonstrate, Plaintiffs suffered new "legal wrongs" because of the 2013 Rule every time a new potential liability attached to them—in other words, every time a direct care worker worked overtime without the proper rate of compensation.

As Judge Sutton explained in *Herr*, under the APA, "[d]ifferent legal wrongs give rise to different rights of action ... even if the different legal wrongs stem from the same order." 803 F.3d at 820 (citations omitted). In that case, the court considered a 2014 pre-enforcement challenge filed against a U.S. Forest Service rule prohibiting the use of motorboats within a federally owned protected zone of a lake in Michigan. The plaintiffs had used the lake since the 1970s and there was no question that the 2007 rule immediately affected their interests. *See id.* The court, however, rejected the Government's argument that the challenge fell outside of Section

2401(a)'s six-year window. As the court noted, although they had rented property at the lake since the 1970s, plaintiffs had also purchased a house there in 2010. *Id*. at 818. Thus, while "the boating restriction harmed the couple's recreational interests in 2007 and perhaps might have given them a right of action under the APA at that time," the purchase of the property in 2010 created a new, legally distinct "right of action" to challenge the 2007 rule. *Id.* at 820.

The Department of Labor never suggested below that *Herr* was wrongly decided, but instead tried to reframe that carefully reasoned and scholarly decision as merely a narrow, as-applied challenge without any relevance here. *See* Reply in Support of MTD at 6. Not so. *Herr* was, like this case, a pre-enforcement (*i.e.*, facial) challenge brought under the APA and the Declaratory Judgment Act. That decision did not even discuss any distinction between "facial" or "as-applied" challenges. Rather, it discussed the change in the plaintiffs' circumstances to explain the nature of the new "legal wrong" entitling the plaintiffs to judicial review. Much like this case, the plaintiffs in *Herr* alleged that the Forest Service rule underlying the agency's threats of enforcement was contrary to law and arbitrary and capricious.[4]

---

[4] *Compare* First Amended Complaint, ECF No. 4, *Herr v. U.S. Forest Service*, 2:14-cv-105 (W.D. Mich.), ¶¶ 67-68 (asking for an order "setting aside" the 2007 Forest

The point was that the purchase of the property gave rise to a new and "different legal wrong," and thus a new and "different right of action," even though both "legal wrongs stem[med] from the same order." *Herr*, 803 F.3d at 820.

The same logic applies here. Under the 2013 Rule, every time a direct care worker worked overtime without the Labor Department-commanded rate of compensation, a new potential liability attached to Plaintiffs. *See Stone*, 935 F.3d at 154 ("a new and separate cause of action for unpaid overtime wages accrue[s]" to the government on "each payday where" an employer "failed to pay its employees proper wages") (cleaned up). Plaintiffs brought this suit after the Department of Labor "threatened to enforce [this] regulation" against them. *Herr*, 803 F.3d at 812. Further, and contrary to the district court's assertions, Plaintiffs do not assert that these threatened liabilities under the 2013 Rule "reset[]" the statute of limitations. Order at 11 (JA-017). Rather their point is that—as in *Herr*—the threat of new liabilities created new "right[s] of action," which accrued less than six years before

---

Service rule and the letter threatening enforcement because they "abrogate the Herrs' valid existing rights" and are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (citations omitted)), *with* Amended Complaint ¶¶ 159–160, 165 (JA-071–72) (asking for an order "declar[ing]" the 2013 Rule "to be invalid and unenforceable" because the Labor Department's "actions as described above cause[] ongoing harm to Plaintiffs and wrongfully and unlawfully den[y] Plaintiffs the ability to claim the Companionship and Live-In Exemptions" under a rule that is "arbitrar[y]," "capricious[]," and "not in accordance with law" (citations omitted)).

they filed suit. For this reason, all three Plaintiffs were entitled to "challenge the regulation without waiting for enforcement proceedings." *Herr*, 803 F.3d at 822.

### C. The District Court's Ruling Was—at the Very Least—Premature.

Dismissal on the basis of a statute of limitations defense is disfavored at the 12(b)(6) stage, and should be granted only if the statutory bar is apparent on the face of the complaint. *See, e.g.*, *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Since Section 2401(a) is not a statute of repose imposing a limitation fixed by the date of a rule's publication, dismissal was—at a minimum—premature, since a plaintiff need not plead around a statute of limitations defense. *Id.*

### CONCLUSION

For these reasons, the district court's order of dismissal should be reversed and the case remanded for further proceedings.

Dated: December 13, 2022                Respectfully submitted,

                                        *s/ Michael B. Buschbacher* (DC. Bar # 1048432)
                                        JONATHAN BERRY
BRUCE C. FOX                            MICHAEL B. BUSCHBACHER
OBERMAYER, REBMAN,                      BOYDEN GRAY & ASSOCIATES, PLLC
  MAXWELL & HIPPEL LLP        801 17th Street NW, Suite 350
525 William Penn Place,                 Washington, DC 20006
  Suite 1710                   (202) 955-0620
Pittsburgh, PA 15219                     buschbacher@boydengrayassociates.com
(412) 566-1500
bruce.fox@obermayer.com

                                        *Counsel for Intra-National Home Care LLC and*
*Counsel for Plaintiffs-Appellants*     *Americare Home Healthcare Services LLC*

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,500 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated: December 13, 2022

Respectfully submitted,

*s/ Michael B. Buschbacher*
Michael B. Buschbacher

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2022, I filed the foregoing with the

Clerk of the Court via CM/ECF, which will serve the following counsel of record:

Laura S. Irwin
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
laura.irwin@usdoj.gov

Alisa B. Klein
David Peters
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
alisa.klein@usdoj.gov
david.l.peters@usdoj.gov

Respectfully submitted,

*s/ Michael B. Buschbacher*
Michael B. Buschbacher

## CERTIFICATE OF VIRUS SCAN

I certify that the Portable Document Format version of the attached document has been scanned for viruses using Malwarebytes v. 4.5.18, and according to that program, the document is free of viruses and worms.

Dated: December 13, 2022

Respectfully submitted,

*s/ Michael B. Buschbacher*
Michael B. Buschbacher

**CERTIFICATE OF BAR MEMBERSHIP, PRIVACY REDACTIONS, AND IDENTICAL ELECTRONIC AND HARD COPY VERSIONS**

I hereby certify that the signatory to this brief, Michael B. Buschbacher, is a member of the bar of this Court. I further certify that no privacy redactions were necessary for this filing. Finally, I certify that the text of the electronic brief is identical to the text in the paper copies.

Dated: December 13, 2022

Respectfully submitted,

*s/ Michael B. Buschbacher*
Michael B. Buschbacher

## ADDENDUM TO BRIEF OF PLAINTIFFS-APPELLANTS
## TABLE OF CONTENTS

| Document Name | Addendum Page |
|---|---|
| 5 U.S.C. §§ 702–706 | A-01 |
| 28 U.S.C. § 2401 | A-04 |

resentatives'' for ''the committees on the Judiciary of the Senate and the House of Representatives, the Select Committee on Small Business of the Senate, and the Committee on Small Business of the House of Representatives'', was executed by making the substitution for ''the Committees on the Judiciary of the Senate and House of Representatives, the Select Committee on Small Business of the Senate, and the Committee on Small Business of the House of Representatives'' to reflect the probable intent of Congress.

Subsec. (b). Pub. L. 104–121, §243(b)(2), substituted ''his or her views with respect to compliance with this chapter, the adequacy of the rulemaking record with respect to small entities and the'' for ''his views with respect to the''.

CHANGE OF NAME

Committee on Small Business of Senate changed to Committee on Small Business and Entrepreneurship of Senate. See Senate Resolution No. 123, One Hundred Seventh Congress, June 29, 2001.

EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–121 effective on expiration of 90 days after Mar. 29, 1996, but inapplicable to interpretative rules for which a notice of proposed rulemaking was published prior to Mar. 29, 1996, see section 245 of Pub. L. 104–121, set out as a note under section 601 of this title.

## CHAPTER 7—JUDICIAL REVIEW

Sec.
701.    Application; definitions.
702.    Right of review.
703.    Form and venue of proceeding.
704.    Actions reviewable.
705.    Relief pending review.
706.    Scope of review.

SHORT TITLE

The provisions of sections 551 to 559 of this title and this chapter were originally enacted by act June 11, 1946, ch. 423, 60 Stat. 237, popularly known as the ''Administrative Procedure Act''. That Act was repealed as part of the general revision of this title by Pub. L. 89–554 and its provisions incorporated into sections 551 to 559 of this title and this chapter.

## § 701. Application; definitions

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

(b) For the purpose of this chapter—

(1) ''agency'' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

(A) the Congress;

(B) the courts of the United States;

(C) the governments of the territories or possessions of the United States;

(D) the government of the District of Columbia;

(E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

(F) courts martial and military commissions;

(G) military authority exercised in the field in time of war or in occupied territory; or

(H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II of chapter 471 of title 49; or sections 1884, 1891–1902, and former section 1641(b)(2), of title 50, appendix; and

(2) ''person'', ''rule'', ''order'', ''license'', ''sanction'', ''relief'', and ''agency action'' have the meanings given them by section 551 of this title.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392; Pub. L. 103–272, §5(a), July 5, 1994, 108 Stat. 1373; Pub. L. 111–350, §5(a)(3), Jan. 4, 2011, 124 Stat. 3841.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
| --- | --- | --- |
| (a) ............. | 5 U.S.C. 1009 (introductory clause). | June 11, 1946, ch. 324, §10 (introductory clause), 60 Stat. 243. |

In subsection (a), the words ''This chapter applies, according to the provisions thereof,'' are added to avoid the necessity of repeating the introductory clause of former section 1009 in sections 702–706.

Subsection (b) is added on authority of section 2 of the Act of June 11, 1946, ch. 324, 60 Stat. 237, as amended, which is carried into section 551 of this title.

In subsection (b)(1)(G), the words ''or naval'' are omitted as included in ''military''.

In subsection (b)(1)(H), the words ''functions which by law expire on the termination of present hostilities, within any fixed period thereafter, or before July 1, 1947'' are omitted as executed. Reference to the ''Selective Training and Service Act of 1940'' is omitted as that Act expired on Mar. 31, 1947. Reference to the ''Sugar Control Extension Act of 1947'' is omitted as that Act expired on Mar. 31, 1948. References to the ''Housing and Rent Act of 1947, as amended'' and the ''Veterans' Emergency Housing Act of 1946'' have been consolidated as they are related. The reference to former section 1641(b)(2) of title 50, appendix, is retained notwithstanding its repeal by §111(a)(1) of the Act of Sept. 21, 1961, Pub. L. 87–256, 75 Stat. 538, since §111(c) of the Act provides that a reference in other Acts to a provision of law repealed by §111(a) shall be considered to be a reference to the appropriate provisions of Pub. L. 87–256.

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

REFERENCES IN TEXT

Sections 1891–1902 of title 50, appendix, referred to in subsec. (b)(1)(H), were omitted from the Code as executed.

AMENDMENTS

2011—Subsec. (b)(1)(H). Pub. L. 111–350 struck out ''chapter 2 of title 41;'' after ''title 12;''.

1994—Subsec. (b)(1)(H). Pub. L. 103–272 substituted ''subchapter II of chapter 471 of title 49; or sections'' for ''or sections 1622,''.

## § 702. Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be

denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392; Pub. L. 94–574, §1, Oct. 21, 1976, 90 Stat. 2721.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(a). | June 11, 1946, ch. 324, §10(a), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

AMENDMENTS

1976—Pub. L. 94–574 removed the defense of sovereign immunity as a bar to judicial review of Federal administrative action otherwise subject to judicial review.

### § 703. Form and venue of proceeding

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392; Pub. L. 94–574, §1, Oct. 21, 1976, 90 Stat. 2721.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(b). | June 11, 1946, ch. 324, §10(b), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

AMENDMENTS

1976—Pub. L. 94–574 provided that if no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer as defendant.

### § 704. Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(c). | June 11, 1946, ch. 324, §10(c), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

### § 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(d). | June 11, 1946, ch. 324, §10(d), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

### § 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(e). | June 11, 1946, ch. 324, §10(e), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

ABBREVIATION OF RECORD

Pub. L. 85–791, Aug. 28, 1958, 72 Stat. 941, which authorized abbreviation of record on review or enforcement of orders of administrative agencies and review on the original papers, provided, in section 35 thereof, that: "This Act [see Tables for classification] shall not be construed to repeal or modify any provision of the Administrative Procedure Act [see Short Title note set out preceding section 551 of this title]."

## CHAPTER 8—CONGRESSIONAL REVIEW OF AGENCY RULEMAKING

Sec.
801. Congressional review.
802. Congressional disapproval procedure.
803. Special rule on statutory, regulatory, and judicial deadlines.
804. Definitions.
805. Judicial review.
806. Applicability; severability.
807. Exemption for monetary policy.
808. Effective date of certain rules.

## §801. Congressional review

(a)(1)(A) Before a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing—

(i) a copy of the rule;

(ii) a concise general statement relating to the rule, including whether it is a major rule; and

(iii) the proposed effective date of the rule.

(B) On the date of the submission of the report under subparagraph (A), the Federal agency promulgating the rule shall submit to the Comptroller General and make available to each House of Congress—

(i) a complete copy of the cost-benefit analysis of the rule, if any;

(ii) the agency's actions relevant to sections 603, 604, 605, 607, and 609;

(iii) the agency's actions relevant to sections 202, 203, 204, and 205 of the Unfunded Mandates Reform Act of 1995; and

(iv) any other relevant information or requirements under any other Act and any relevant Executive orders.

(C) Upon receipt of a report submitted under subparagraph (A), each House shall provide copies of the report to the chairman and ranking member of each standing committee with jurisdiction under the rules of the House of Representatives or the Senate to report a bill to amend the provision of law under which the rule is issued.

(2)(A) The Comptroller General shall provide a report on each major rule to the committees of jurisdiction in each House of the Congress by the end of 15 calendar days after the submission or publication date as provided in section 802(b)(2). The report of the Comptroller General shall include an assessment of the agency's compliance with procedural steps required by paragraph (1)(B).

(B) Federal agencies shall cooperate with the Comptroller General by providing information relevant to the Comptroller General's report under subparagraph (A).

(3) A major rule relating to a report submitted under paragraph (1) shall take effect on the latest of—

(A) the later of the date occurring 60 days after the date on which—

(i) the Congress receives the report submitted under paragraph (1); or

(ii) the rule is published in the Federal Register, if so published;

(B) if the Congress passes a joint resolution of disapproval described in section 802 relating to the rule, and the President signs a veto of such resolution, the earlier date—

(i) on which either House of Congress votes and fails to override the veto of the President; or

(ii) occurring 30 session days after the date on which the Congress received the veto and objections of the President; or

(C) the date the rule would have otherwise taken effect, if not for this section (unless a joint resolution of disapproval under section 802 is enacted).

(4) Except for a major rule, a rule shall take effect as otherwise provided by law after submission to Congress under paragraph (1).

(5) Notwithstanding paragraph (3), the effective date of a rule shall not be delayed by operation of this chapter beyond the date on which either House of Congress votes to reject a joint resolution of disapproval under section 802.

(b)(1) A rule shall not take effect (or continue), if the Congress enacts a joint resolution of disapproval, described under section 802, of the rule.

(2) A rule that does not take effect (or does not continue) under paragraph (1) may not be reissued in substantially the same form, and a new rule that is substantially the same as such a rule may not be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule.

(c)(1) Notwithstanding any other provision of this section (except subject to paragraph (3)), a



them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.

Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

(June 25, 1948, ch. 646, 62 Stat. 970; May 24, 1949, ch. 139, § 117, 63 Stat. 105.)

### HISTORICAL AND REVISION NOTES

#### 1948 ACT

Based on title 28, U.S.C., 1940 ed., § 41(26) (Mar. 3, 1911, ch. 231, § 24, par. 26, as added Jan. 20, 1936, ch. 13, § 1, 49 Stat. 1096).

Jurisdiction and venue provisions of section 41(26) of title 28, U.S.C., 1940 ed., appear in sections 1335 and 1397 of this title.

Subsection (e) of section 41(26) of title 28, U.S.C., 1940 ed., relating to defense in nature of interpleader and joinder of additional parties, was omitted as unnecessary, such matters being governed by the Federal Rules of Civil Procedure.

Words, "Notwithstanding any provision of part I of this title to the contrary" were omitted as unnecessary, since the revised title contains no "contrary provisions."

Changes were made in phraseology.

#### 1949 ACT

This section makes clear that section 2361 of title 28, U.S.C., applies only to statutory actions and not to general equity interpleader suits in which the jurisdictional amount and diversity of citizenship requirements are the same as in other diversity cases.

### Editorial Notes

#### AMENDMENTS

1949—Act May 24, 1949, substituted "In any civil action of interpleader or in the nature of interpleader under section 1335 under this title" for "In any interpleader action,", and inserted "or prosecuting" between "instituting" and "any proceeding".

## CHAPTER 161—UNITED STATES AS PARTY GENERALLY

Sec.
2401. Time for commencing action against United States.
2402. Jury trial in actions against United States.
2403. Intervention by United States or a State; constitutional question.
2404. Death of defendant in damage action.
2405. Garnishment.
2406. Credits in actions by United States; prior disallowance.
2407. Delinquents for public money; judgment at return term; continuance.
2408. Security not required of United States.
2409. Partition actions involving United States.
2409a. Real property quiet title actions.
2410. Actions affecting property on which United States has lien.
2411. Interest.
2412. Costs and fees.
2413. Executions in favor of United States.
2414. Payment of judgments and compromise settlements.
2415. Time for commencing actions brought by the United States.
2416. Time for commencing actions brought by the United States—Exclusions.

### HISTORICAL AND REVISION NOTES

#### 1949 ACT

This section amends the analysis of chapter 161 of title 28, U.S.C., to conform item 2411 therein with the catch line of section 2411 of such title as amended by another section of this bill.

### Editorial Notes

#### AMENDMENTS

1980—Pub. L. 96–481, title II, § 204(b), Oct. 21, 1980, 94 Stat. 2329, substituted "Costs and fees" for "Costs" in item 2412.

1976—Pub. L. 94–381, § 6, Aug. 12, 1976, 90 Stat. 1120, inserted "or a State" after "United States" in item 2403.

1972—Pub. L. 92–562, § 3(b), Oct. 25, 1972, 86 Stat. 1177, added item 2409a.

1966—Pub. L. 89–505, § 2, July 18, 1966, 80 Stat. 305, added items 2415 and 2416.

1961—Pub. L. 87–187, § 2, Aug. 30, 1961, 75 Stat. 416, substituted "and compromise settlements" for "against the United States" in item 2414.

1954—Act July 30, 1954, ch. 648, § 2(b), 68 Stat. 589, struck out "denied" in item 2402.

1949—Act May 24, 1949, ch. 139, § 118, 63 Stat. 105, substituted "Interest" for "Interest on judgments against United States" in item 2411.

## § 2401. Time for commencing action against United States

(a) Except as provided by chapter 71 of title 41, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

(June 25, 1948, ch. 646, 62 Stat. 971; Apr. 25, 1949, ch. 92, § 1, 63 Stat. 62; Pub. L. 86–238, § 1(3), Sept. 8, 1959, 73 Stat. 472; Pub. L. 89–506, § 7, July 18, 1966, 80 Stat. 307; Pub. L. 95–563, § 14(b), Nov. 1, 1978, 92 Stat. 2389; Pub. L. 111–350, § 5(g)(8), Jan. 4, 2011, 124 Stat. 3848.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§ 41(20), 942 (Mar. 3, 1911, ch. 231, § 24, part 20, 36 Stat. 1093; Nov. 23, 1921, ch. 136, § 1310(c), 42 Stat. 311; June 2, 1924, 4:01 p.m., ch. 234, § 1025(c), 43 Stat. 348; Feb. 24, 1925, ch. 309, 43 Stat. 972; Feb. 26, 1926, ch. 27, §§ 1122(c), 1200, 44 Stat. 121, 125; Aug. 2, 1946, ch. 753, § 420, 60 Stat. 845).

Section consolidates provision in section 41(20) of title 28, U.S.C., 1940 ed., as to time limitation for bringing actions against the United States under section 1346(a) of this title, with section 942 of said title 28.

Words "or within one year after the date of enactment of this Act whichever is later", in section 942 of title 28, U.S.C., 1940 ed., were omitted as executed.

Provisions of section 41(20) of title 28, U.S.C., 1940 ed., relating to jurisdiction of district courts and trial by the court of actions against the United States are the basis of sections 1346(a) and 2402 of this title.

Words in subsec. (a) of this revised section, "person under legal disability or beyond the seas at the time the claim accrues" were substituted for "claims of married women, first accrued during marriage, of persons under the age of twenty-one years, first accrued during minority, and of idiots, lunatics, insane persons, and persons beyond the seas at the time the claim accrued, entitled to the claim." (See reviser's note under section 2501 of this title.)

Words in section 41(20) of title 28, U.S.C., 1940 ed., "nor shall any of the said disabilities operate cumulatively" were omitted. (See reviser's note under section 2501 of this title.)

A provision in section 41(20) of title 28, U.S.C., 1940 ed., that disabilities other than those specifically mentioned should not prevent any action from being barred was omitted as superfluous.

Subsection (b) of the revised section simplifies and restates said section 942 of title 28, U.S.C., 1940 ed., without change of substance.

Changes were made in phraseology.

SENATE REVISION AMENDMENT

Subsection (b) amended in the Senate to insert the 1 year limitation on the bringing of tort actions and to include the limitation upon the time in which tort claims not exceeding $1000 must be presented to the appropriate Federal agencies for administrative disposition. 80th Congress Senate Report No. 1559, Amendment No. 48.

EDITORIAL NOTES

AMENDMENTS

2011—Subsec. (a). Pub. L. 111–350 substituted "chapter 71 of title 41" for "the Contract Disputes Act of 1978".

1978—Subsec. (a). Pub. L. 95–563 inserted Contract Disputes Act of 1978 exception.

1966—Subsec. (b). Pub. L. 89–506 struck out provisions dealing with a certain claim of $2,500 or under as a special category of tort claim requiring preliminary administrative action and substituted provisions requiring presentation of all tort claims to the appropriate Federal agency in writing within two years after the claim accrues and commencement of an action within six months of the date of mailing of notice of final denial of the claim by the agency to which it was presented for provisions requiring commencement of an action within two years after the claim accrues.

1959—Subsec. (b). Pub. L. 86–238 substituted "$2,500" for "$1,000" in two places.

1949—Subsec. (b). Act Apr. 25, 1949, the time limitation on bringing tort actions from 1 year to 2 years.

STATUTORY NOTES AND RELATED SUBSIDIARIES

EFFECTIVE DATE OF 1978 AMENDMENT

Amendment by Pub. L. 95–563 effective with respect to contracts entered into 120 days after Nov. 1, 1978, and, at the election of the contractor, with respect to any claim pending at such time before the contracting officer or initiated thereafter, see section 16 of Pub. L. 95–563, Nov. 1, 1978, 92 Stat. 2391, formerly set out as an Effective Date note under section 601 of former Title 41, Public Contracts.

EFFECTIVE DATE OF 1966 AMENDMENT

Amendment by Pub. L. 89–506 applicable to claims accruing six months or more after July 18, 1966, see section 10 of Pub. L. 89–506, set out as a note under section 2672 of this title.

## § 2402. Jury trial in actions against United States

Subject to chapter 179 of this title, any action against the United States under section 1346 shall be tried by the court without a jury, except that any action against the United States under section 1346(a)(1) shall, at the request of either party to such action, be tried by the court with a jury.

(June 25, 1948, ch. 646, 62 Stat. 971; July 30, 1954, ch. 648, § 2(a), 68 Stat. 589; Pub. L. 104–331, § 3(b)(3), Oct. 26, 1996, 110 Stat. 4069.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§ 41(20), 931(a) (Mar. 3, 1911, ch. 231, § 24, par. 20, 36 Stat. 1093; Nov. 23, 1921, ch. 136, § 1310(c), 42 Stat. 311; June 2, 1924, 4:01 p.m., ch. 234, § 1025(c), 43 Stat. 348; Feb. 24, 1925, ch. 309, 43 Stat. 972; Feb. 26, 1926, ch. 27, §§ 1122(c), 1200, 44 Stat. 121, 125; Aug. 2, 1946, ch. 753, § 410(a), 60 Stat. 843).

Section consolidates non-jury provisions of sections 41(20) and 931(a) of title 28, U.S.C., 1940 ed. For other provisions of said section 931(a) relating to tort claims, see Distribution Table.

Word "actions" was substituted for "suits", in view of Rule 2 of the Federal Rules of Civil Procedure.

Provisions of title 28, U.S.C., 1940 ed., § 41(20) relating to jurisdiction of district courts and time for bringing actions against the United States are the basis of sections 1346 and 2401 of this title.

EDITORIAL NOTES

AMENDMENTS

1996—Pub. L. 104–331 substituted "Subject to chapter 179 of this title, any action" for "Any action".

1954—Act July 30, 1954, permitted a jury trial at the request of either party in actions under section 1346(a)(1) of this title.

STATUTORY NOTES AND RELATED SUBSIDIARIES

EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–331 effective Oct. 1, 1997, see section 3(d) of Pub. L. 104–331, set out as an Effective Date note under section 1296 of this title.

## § 2403. Intervention by United States or a State; constitutional question

(a) In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

(b) In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall,

# In the United States Court of Appeals for the Third Circuit

INTRA-NATIONAL HOME CARE LLC, ET AL,
*Plaintiffs-Appellants,*

v.

UNITED STATES DEPARTMENT OF LABOR, ET AL
*Defendants-Appellees.*

On Appeal from the United States District Court for the
Western District of Pennsylvania
Case Nos. 2:20-cv-01545 &
2:20-cv-01773
The Honorable W. Scott Hardy

## JOINT APPENDIX VOLUME I
## JA-001 THROUGH JA-019

BRUCE C. FOX
ANDREW J. HOROWITZ
OBERMAYER, REBMAN,
    MAXWELL & HIPPEL LLP
525 William Penn Place,
  Suite 1710
Pittsburg, PA 15219 (412)
566-1500
bruce.fox.@obermayer.com

*Counsel for Plaintiffs-
Appellants*

JONATHAN BERRY
MICHAEL B. BUSCHBACHER
BOYDEN GRAY & ASSOCIATES, PLLC 801
17th Street NW, Suite 350 Washington, DC
20006
(202) 955-0620
buschbacher@boydengrayassociates.com

*Counsel for Intra-National Home Care LLC
and Americare Home Healthcare Services
LLC*

# APPENDIX TABLE OF CONTENTS

| Document Name | Appendix Page |
|---|---|
| **VOLUME I** | |
| Doc. 73: Notice of Appeal | JA-001 |
| Doc. 72: Judgement Order | JA-004 |
| Doc. 71: Order of the Court | JA-005 |
| Doc. 70: Memorandum Opinion | JA-007 |
| **VOLUME II** | |
| District Court's Docket | JA-020 |
| Doc. 25: Amended Complaint | JA-039 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTRA-NATIONAL HOME CARE, LLC, *et al.*,<br><br>        *Plaintiffs,*<br><br>    v.<br><br>DEPARTMENT OF LABOR, *et al.*<br><br>    *Defendants.* | No. 2:20-CV-1545-WSH |
| AGEWELL HOME HELPERS, INC.<br><br>    *Plaintiff,*<br><br>    v.<br><br>DEPARTMENT OF LABOR, *et al.*<br><br>    *Defendants.* | No. 2:20-CV-1773-WSH |

## NOTICE OF APPEAL

Notice is given that Intra-National Home Care, LLC, Americare Home Healthcare Services, LLC, and Agewell Home Helpers, Inc., plaintiffs in this consolidated matter, appeal to the United States Court of Appeals for the Third Circuit from the final judgment the Court entered against them on July 20, 2022.

                                Respectfully submitted,

                                */s/ Bruce C. Fox*

Jonathan Berry (DC 1016352)          Bruce C. Fox (PA 42576)
Michael Buschbacher (DC 1048432)     Andrew J. Horowitz (PA 311949)
BOYDEN GRAY & ASSOCIATES             OBERMAYER REBMANN
801 17th Street, NW #350             MAXWELL & HIPPEL LLP

1

Washington, DC 20006
(202) 955-0620
berry@boydengrayassociates.com
buschbacher@boydengrayassociates.com

525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
bruce.fox@obermayer.com
andrew.horowitz@obermayer.com

*Counsel for Plaintiffs Intra-National*
*Home Care, LLC and Americare*
*Home Healthcare Services, LLC*

*Counsel for Plaintiffs*

2

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 31st day of August 2022, a true and correct copy of the foregoing Notice of Appeal has been filed and served on the following counsel of record using the Court's ECF system:

Zach A. Avallone, Esq.
zachary.a.avallone@usdoj.gov

Respectfully submitted,

*/s/ Bruce C. Fox*
Bruce C. Fox

4895-3563-0128 v1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTRA-NATIONAL HOME CARE, LLC,<br>and AMERICARE HOME HEALTHCARE<br>SERVICES, LLC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1545 |
| | ) | |
| UNITED STATES DEPARTMENT OF<br>LABOR, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AGEWELL HOME HELPERS, INC. d/b/a<br>AGEWELL CAREGIVER SERVICE, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1773 |
| | ) | |
| UNITED STATES DEPARTMENT OF<br>LABOR, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## **JUDGMENT ORDER**

AND NOW, this 20th day of July, 2022, the Court having dismissed this action by separate

Memorandum Opinion and Order of Court on this date,

IT IS HEREBY ORDERED that final judgment of this Court is entered against Plaintiffs

pursuant to Rule 58 of the Federal Rules of Civil Procedure.


/s/ *W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf:  All counsel of record


JA-004

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTRA-NATIONAL HOME CARE, LLC,<br>and AMERICARE HOME HEALTHCARE<br>SERVICES, LLC,<br><br>               Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF<br>LABOR, et al.,<br><br>               Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 20-1545 |
| AGEWELL HOME HELPERS, INC. d/b/a<br>AGEWELL CAREGIVER SERVICE,<br><br>               Plaintiff,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF<br>LABOR, et al.,<br><br>               Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 20-1773 |

## <u>ORDER OF COURT</u>

AND NOW, this 20th day of July, 2022, for the reasons set forth in the accompanying Memorandum Opinion filed herewith, upon consideration of Defendants' Renewed Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Docket No. 30), and the briefs filed in support of and in opposition to such motion,

IT IS HEREBY ORDERED that Defendants' motion is granted, and Plaintiffs' claims at Counts One and Two of Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief are dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

1

The Clerk of Court shall mark this case closed.

/s/ *W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record

JA-006

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTRA-NATIONAL HOME CARE, LLC, and AMERICARE HOME HEALTHCARE SERVICES, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Civil Action No. 20-1545 |
| UNITED STATES DEPARTMENT OF LABOR, et al., | ) ) ) | |
| Defendants. | ) ) | |
| AGEWELL HOME HELPERS, INC. d/b/a AGEWELL CAREGIVER SERVICE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Civil Action No. 20-1773 |
| UNITED STATES DEPARTMENT OF LABOR, et al., | ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

These consolidated cases[1] involve claims brought by Plaintiffs Intra-National Home Care,

LLC, Americare Home Healthcare Services, LLC, and Agewell Home Helpers, Inc., d/b/a Agewell

Caregiver Service, against Defendants United States Department of Labor, Martin J. Walsh,

Secretary of Labor, and Jessica Looman, Principal Deputy Administrator of the Wage and Hour

---

[1]     On December 9, 2020, Defendants filed an unopposed motion to Consolidate *Agewell Home Helpers, Inc. v. DOL*, No. 20-1773 (W.D. Pa.), with *Intra-National Home Care, LLC v. DOL*, No. 20-1545 (W.D. Pa.).   (Docket No. 11).   On December 11, 2020, the Court issued an Order granting Defendants' motion and consolidating the cases. (Docket No. 12).

1

Division (collectively, the "DOL").[2]  Plaintiffs allege at Count One of the consolidated Amended Complaint for Declaratory and Injunctive Relief ("Consolidated Amended Complaint") that the DOL's regulation codified at 29 C.F.R. § 552.109 conflicts with the text of the Fair Labor Standards Act ("FLSA") and otherwise is contrary to law.  (Docket No. 25, ¶¶ 156-60).  At Count Two, Plaintiffs allege that the DOL did not provide adequate justification or explanation when promulgating the current version of 29 C.F.R. § 552.109, thus rendering it arbitrary and capricious.  (Docket No. 25, ¶¶ 161-67).  Plaintiffs also asserted additional claims at Counts Three and Four, but they voluntarily dismissed those claims pursuant to a Stipulation filed on May 18, 2021.  (Docket No. 34).

Presently before the Court is Defendants' Renewed Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Memorandum in Support (Docket Nos. 30, 33), Plaintiffs' Memorandum in Opposition (Docket No. 38), and Defendants' Reply (Docket No. 45).  The Court heard oral argument on November 18, 2021.  (Docket Nos. 58, 63).  Defendants' motion is ripe for decision.

## I.   <u>Background</u>[3]

As set forth in the Consolidated Amended Complaint, the FLSA, 29 U.S.C. §§ 201 *et seq.*, generally requires covered employers to pay non-exempt employees a minimum wage and overtime pay.  (Docket No. 25, ¶¶ 58, 59).  In 1974, Congress amended the FLSA to extend its minimum wage and overtime provisions to employees in "domestic service."  *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007) (citing Fair Labor Standards Amendments

---

[2]      These actions were initially filed against then-Secretary of Labor Eugene Scalia and then-Wage and Hour Division Administrator Cheryl Stanton.  (Docket No. 1, ¶¶ 2, 4).

[3]      At this stage of the case, the factual allegations set forth in the Consolidated Amended Complaint must be taken as true and viewed in the light most favorable to Plaintiffs.

of 1974 ("1974 Amendments"), Pub. L. No. 93-259, §§ 7(b)(1), (2), 88 Stat. 55, 62 (adding 29 U.S.C. §§ 206(f), 207(l))).  At the same time, Congress also exempted defined categories of domestic service workers from certain of its provisions, including companionship and live-in domestic service workers.  (Docket No. 25, ¶¶ 60-63); *see also Long Island Care at Home*, 551 U.S. at 162 (citing 1974 Amendments, § 7(b)(3), 88 Stat. 55, 62 (codified at 29 U.S.C. § 213(a)(15)); 29 U.S.C. § 213(a)(15) (the "Companionship Exemption") and 29 U.S.C. § 213(b)(21) (the "Live-in Exemption").  The 1974 Amendments also included a grant of rulemaking authority empowering the Secretary of Labor to "prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act."  1974 Amendments, § 29(b), 88 Stat. 55, 76; *see Long Island Care at Home*, 551 U.S. at 165.

In 1975, shortly after Congress enacted the Companionship and Live-In Exemptions, the DOL promulgated a regulation permitting individuals employed by third-party agencies to be covered by these statutory exemptions.  (Docket No. 25, ¶¶ 64-67 (citing 29 C.F.R. § 552.109(a) (prior to Jan. 1, 2015))).  Plaintiffs contend that from 1975 to 2015, third-party agencies relied upon the DOL's Companionship and Live-In Exemptions when establishing their operations and pay practices, especially regarding direct care workers paid pursuant to the Medicaid Waiver Program.  (Docket No. 25, ¶¶ 12, 71, 73).  In 2007, the United States Supreme Court upheld the Companionship Exemption and its application to third-party agencies in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007).  (Docket No. 25, ¶ 69).  However, after several unsuccessful attempts to change this regulation in 1993, 1995, and 2001, the DOL did revise 29 C.F.R. § 552.109 to eliminate the ability of third-party agencies to avail themselves of these exemptions.  (Docket No. 25, ¶ 74); *see Home Care Ass'n of America v. Weil*, 799 F.3d 1084, 1088-89 (D.C. Cir. 2015).  The DOL published this revised regulation in the Federal Register on

October 1, 2013, and it became effective on January 1, 2015.  (Docket No. 25, ¶¶ 13, 79 (citing

Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454, 60455 (Oct.

1, 2013); 29 C.F.R. § 522.109 (2015)); *see Home Care Ass'n of America*, 799 F.3d at 1088-89.

Plaintiffs are third-party agencies which employ or otherwise process service and payroll

documents for direct care workers who mostly provide in-home companionship and assistance

services to elderly and disabled family or household members of low-income families in

Pennsylvania, Ohio, Michigan, and Iowa through the Medicare Waiver Program. (Docket No. 25,

¶¶ 1-2, 9).  As described by Plaintiffs:

> Under the Medicaid Waiver Program, the federal government waives medical
> assistance rules intended for institutional care and allows States to use Medicaid
> reimbursement funds to provide care to elderly and disabled persons in their
> homes.  State agencies administer the Medicaid Waiver Program by contracting
> with private intermediary entities, which determine the recipients' eligibility,
> create individual service plans, and approve Providers of in-home services.  The
> Providers, which include third-party agencies such as Plaintiffs, then engage,
> coordinate training, and complete payroll services for the Direct Care Workers.
> The third party agencies receive Medicaid reimbursement funds from which the
> agencies pay the Direct Care Workers' wages, administrative costs, and FICA
> taxes.

(*Id.* ¶ 10).

As a consequence of the DOL's revisions to 29 C.F.R. § 552.109 that became effective in

2015, Plaintiffs restructured the rates of pay applicable to their direct care workers to allow for

overtime pay within the financial constraints of the Medicaid Waiver Program.  (Docket No. 25,

¶ 100).  The DOL deems this restructured arrangement to be a "serious violation" of the FLSA.

(*Id.* ¶ 101).  Plaintiffs contend that the DOL's decision to no longer permit them to avail themselves

of the Companionship and Live-In Exemptions places a "crippling financial burden upon them"

and "threatens their ability to continue to serve elderly and disabled care recipients."  (*Id.* ¶ 109).

Plaintiffs now challenge the validity of the current version of 29 C.F.R. § 552.109.  While

acknowledging that a group of trade associations representing home care agencies unsuccessfully challenged 29 C.F.R. § 552.109 under the Administrative Procedure Act ("APA") in 2014, *see Home Care Ass'n. of America*, 799 F.3d 1084, Plaintiffs renew this challenge here in reliance on new Supreme Court authority that directs courts to interpret FLSA exemptions more broadly, pursuant to a "fair" rather than a narrow reading, *see Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).  (Docket No. 25, ¶¶ 84-89, 111-22 (discussing both cases)).

In furtherance of their challenges to the validity of 29 C.F.R. § 552.109, Plaintiffs' Consolidated Amended Complaint initially sought a declaration that Plaintiffs' direct care workers are exempt from the FLSA's minimum wage and overtime requirements, an order enjoining the DOL from pursuing claims against them for back wages on behalf of those direct care workers, and a declaration that the States and privately owned Medicaid healthcare plans are joint employers of the direct care workers.  (Docket No. 25, ¶¶ 6, 8).  After the DOL filed its Renewed Motion to Dismiss Plaintiffs' claims in their entirety, Plaintiffs withdrew certain claims asserting that they were not the employers of the direct care workers, or, alternatively, that they, the States, and other private companies were joint employers of those direct care workers.  (Docket No. 34).  Plaintiffs also narrowed their remaining claims by no longer seeking to enjoin the DOL from investigating them.  (Docket No. 38 at 14-15).

Separate and apart from this case are three enforcement actions that the DOL has commenced against Plaintiffs, two of which are pending in this district and a third which is pending in the Southern District of Ohio:

- On January 26, 2021, the DOL filed an enforcement action against Agewell Home Helpers, Inc. and its owners in this district at Civil Action No. 21-108 (W.D. Pa.).

- On October 15, 2021, the DOL filed an enforcement action against Intra-National Home Care, LLC and its CEO, Dilli Adhikari, in this district at Civil Action No. 21-1391 (W.D. Pa.).

- On October 19, 2021, the DOL filed an enforcement action against American Healthcare Services, Inc. in the Southern District of Ohio at Civil Action No. 21-5076 (S.D. Ohio).

(Docket No. 62 at 4-5).[4]

In the case before this Court, the DOL seeks to dismiss Plaintiffs' claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for being filed after the expiration of the applicable six-year statute of limitations pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. <u>Standards of Review</u>

### A. <u>Rule 12(b)(1) of the Federal Rules of Civil Procedure</u>

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the "court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). There is a crucial difference between a Rule 12(b)(1) motion that attacks a complaint on its face, and a Rule 12(b)(1) motion that attacks the existence of subject matter jurisdiction in fact – apart from any pleadings. *See Mortensen*, 549 F.2d at 891. With a facial attack, a court must consider the allegations of a complaint as true, as with a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6), discussed *infra*. *See id.* With a factual attack, however, the Court ordinarily is not required to limit its inquiry to the facts as they are pled

---

[4]    On January 9, 2022, Plaintiffs sought to consolidate the case at bar with the DOL's enforcement action against Intra-National Home Care, LLC and its CEO, Dilli Adhikari (Civil Action No. 21-1391), which this Court denied. (Docket Nos. 68, 69).

in the complaint because a presumption of truth is not attached to the plaintiff's allegations, and the plaintiff bears the burden of proving that jurisdiction over the subject matter at issue exists. *See id.*; *see also Brown v. Tucci*, 960 F. Supp. 2d 544, 561-62 (W.D. Pa. 2013) (citing *Dev. Fin. Corp. v. Alpha Hous. & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995)).

### B. Rule 12(b)(6) of the Federal Rules of Civil Procedure

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (additional internal citation omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.

7

at 556).  The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation omitted)).

## III.  Discussion

### A.  The Court Has Subject Matter Jurisdiction.

Plaintiffs seek to implicate this Court's subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201(a), as well as pursuant to the judicial review provisions of the APA.  (Docket No. 25, ¶ 21).  The DOL initially contended that Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), arguing that none of the statutes upon which Plaintiffs rely contain or incorporate a waiver of sovereign immunity.[5]  While the parties initially disagreed and extensively briefed their respective positions as to whether this Court has subject matter jurisdiction over Plaintiffs' claims, their disagreement has melted away upon Plaintiffs' voluntary dismissal of Counts Three and Four of the Consolidated Amended Complaint and Plaintiffs' concession that they are only seeking declaratory and non-monetary relief and not seeking to enjoin the DOL from investigating or instituting enforcement suits against them. (Docket Nos. 34, 38 at 13-17).  All that remains are Plaintiffs' pre-enforcement facial challenges

---

[5]       As stated by the United States Court of Appeals for the Third Circuit, "absent congressional authorization through an unequivocal statutory waiver it is 'unquestioned' that the federal government retains sovereign immunity." *Gentile v. SEC*, 974 F.3d 311, 315 (3d Cir. 2020) (quoting *Alden v. Maine*, 527 U.S. 706, 749 (1999)); *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004) (noting that "a claim of sovereign immunity . . . raises a jurisdictional defense").

to the validity of 29 C.F.R. § 552.109 pursuant to the APA, 5 U.S.C. § 706(2)(A).  Indeed, at Count

One, Plaintiffs contend that 29 C.F.R. § 552.109 conflicts with the text of the FLSA and otherwise

is contrary to law; at Count Two, Plaintiffs contend that the DOL did not provide adequate

justification or explanation when promulgating the current version of 29 C.F.R. § 552.109, thus

rendering it arbitrary and capricious. (Docket No. 25, ¶¶ 158, 165).   The parties no longer

controvert this Court's subject matter jurisdiction now that the scope of Plaintiffs' claims has

narrowed.  Accordingly, the Court maintains subject matter jurisdiction here.

**B. Plaintiffs' Pre-Enforcement Facial Challenges to 29 C.F.R. § 552.109 Are Untimely.**

The DOL argues that Plaintiffs' pre-enforcement facial challenges to the validity of 29

C.F.R. § 552.109 should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure because they are untimely under the relevant six-year statute of limitations applicable

to the APA.  *See* 28 U.S.C. § 2401(a) (stating, in relevant part, "every civil action commenced

against the United States shall be barred unless the complaint is filed within six years after the

right of action first accrues"); *Pa. Dept. of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*,

101 F.3d 939, 944-45 (3d Cir. 1996) (applying the six-year statute of limitations to civil actions

filed pursuant to the APA); *see also Nat'l. Ass'n. of Mfrs. v. Dep't. of Def.*, 138 S. Ct. 617, 626-27

(2018) (same).  The DOL further contends that all such challenges to the current version of 29

C.F.R. § 552.109 must have been made on or before October 1, 2019, which was six years after

the DOL took final agency action by promulgating this regulation on October 1, 2013. *See*

*Application of the Fair Labor Standards Act to Domestic Service*, 78 Fed. Reg. 60454 (Oct. 1,

2013); *see also Custin v. Wirths*, Civ. No. 12-910 (KM), 2014 WL 356254, at *9 (D.N.J. Jan. 31,

2014) (citing *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287

(5th Cir. 1997), stating that the limitations period for facial challenges begins to run when the

agency publishes the regulation in the Federal Register). Finally, the DOL asserts that Plaintiffs' claims are untimely because the instant action was filed more than a year after the six-year limitations period expired. Plaintiffs disagree, contending, first, that their challenges to 29 C.F.R. § 552.109 are not subject to the six-year statute of limitations set forth in 28 U.S.C. § 2401 and are thus timely pursuant to the doctrine of laches; and second, that their challenges are nonetheless timely even if the six-year statute of limitations set forth in 28 U.S.C. § 2401 is applicable. The Court disagrees with both of Plaintiffs' arguments.

Plaintiffs assert that the APA itself does not contain a limitations period, and that the six-year limitations period in 28 U.S.C. § 2401 is not applicable to its APA-based challenges to 29 C.F.R. § 552.109 because they seek to "'enforce rights cognizable only in equity,'" citing *Saffron v. Dep't of the Navy*, 561 F.2d 938, 943 (D.C. Cir. 1977) (quoting *Russell v. Todd*, 309 U.S. 280, 291 (1940)); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677-78 (2014); *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967); *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946); and *Petrowicz v. Holland*, 142 F. Supp. 369, 374 (E.D.Pa. 1956). (Docket No. 38 at 19-20). Instead, Plaintiffs argue that the timeliness of their claims should be evaluated pursuant to the doctrine of laches and deemed timely thereunder.[6]

---

[6] "Laches is a defense developed by courts of equity to protect defendants against unreasonable, prejudicial delay in commencing suit." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, 137 S. Ct. 954, 960 (2017) (internal quotation marks and citation omitted). Plaintiffs misapply laches here by errantly attempting to use it as a sword to evade the applicable statute of limitations to advance otherwise untimely claims when the purpose of this equitable doctrine is to serve as a shield to defend against prejudicially stale claims. The Court recognizes the nuance raised here, namely, that Plaintiffs' Consolidated Amended Complaint preemptively attempts to assert defenses to the DOL's enforcement actions challenging the validity of 29 C.F.R. § 552.109. Regardless, even if laches could be deployed affirmatively as Plaintiffs attempt to do here, they have not demonstrated that their delay in commencing these actions was excusable and that such delay did not prejudice the DOL. *See Santana Prods. Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 138 (3d Cir. 2005) (holding that whenever the applicable statute of limitations has expired, it is plaintiff's burden to rebut the presumption of inexcusable delay in commencing suit *and* prejudice to the defendant because of the delay).

Plaintiffs' argument relies on an incorrectly expansive reading of *Abbott Laboratories* that, by permitting the application of laches in an APA pre-enforcement review case, the Supreme Court, by necessary implication, forestalls the application of the six-year statute of limitations in 28 U.S.C. § 2401 to such cases.  However, the Court finds nothing in *Abbott Laboratories* that would nullify controlling authority that applies the six-year statute of limitations of 28 U.S.C. § 2401 to facial challenges to an agency regulation pursuant to the APA.  *See Nat'l. Ass'n. of Mfrs.*, 138 S. Ct. at 626-27; *Pa. Dept. of Pub. Welfare*, 101 F.3d at 944-45; *Paucar v. Att'y Gen. of the U.S.*, 545 Fed. Appx. 121, 124 (3d Cir. 2013) ("It is well established that the six-year statute of limitations applies to claims brought pursuant to the APA.").

Plaintiffs alternatively contend that their claims are timely even if the six-year statute of limitations were to apply.  Plaintiffs argue that their pre-enforcement facial challenge to 29 C.F.R. § 552.109 first "accrues" pursuant to 28 U.S.C. § 2401 when they "can file suit and obtain relief," *Petrella*, 572 U.S. at 670 (internal citation omitted), and that Plaintiffs Americare and Agewell could not have filed suit and obtained relief until they came into being in 2015 and 2016,[7] respectively.  (Docket No. 38 at 23).  Plaintiff Intra-National came into existence in 2013[8] and therefore did exist prior to the DOL's promulgation of 29 C.F.R. § 552.109, so Plaintiffs contend that its claims nonetheless are timely because each alleged violation of that regulation results in "a new potential liability" on each successive payday.  (Docket No. 38 at 24-25).

Plaintiffs' attempt to reset the statutory limitations period, at any time a regulated entity comes into being or is otherwise subject to ongoing enforcement, conflates facial and as-applied challenges to administrative regulations.  Plaintiffs identify no controlling authority to support

---

[7]     *See* Docket No. 25, ¶¶ 29, 38.

[8]     *See* Docket No. 25, ¶ 29.

these novel arguments, which, if adopted, would vitiate the statute of limitations here.[9]  To the contrary, the United States Court of Appeals for the Third Circuit long ago determined that the six-year limitations period applicable to facial challenges to a regulation under the APA begins to run upon promulgation of the regulation being challenged.  *See Pa. Dept. of Pub. Welfare*, 101 F.3d at 944-945; *see also Custin*, 2014 WL 356254, at *9 (explaining that "the right of action first accrue[s] in the context of a facial challenge to a regulation" at the time "when the agency publishes the regulation in the Federal Register" (internal quotation marks and citations omitted)).

The final agency action at issue in this case occurred when the DOL promulgated the current version of 29 C.F.R. § 552.109 by publishing it in the Federal Register on October 1, 2013.  *See Application of the Fair Labor Standards Act to Domestic Service*, 78 Fed. Reg. 60454 (Oct. 1, 2013).  Plaintiffs filed their initial complaints in these consolidated cases on October 9, 2020 and November 13, 2020, respectively.  Plaintiffs' pre-enforcement facial challenges to 29 C.F.R. § 552.109 were filed after the six-year limitations period in 28 U.S.C. § 2401 had expired and are therefore time-barred.

In granting the DOL's Rule 12(b)(6) motion to dismiss Plaintiffs' facial challenges to the validity of 29 C.F.R. § 552.109 as untimely pursuant to 28 U.S.C. § 2401, this Court renders no opinion as to the substantive merits of Plaintiffs' claims that this DOL regulation conflicts with

---

[9]     Plaintiffs do not seek refuge under the doctrine of equitable tolling, and the Court finds no justification in the record to apply equitable tolling here.  The Third Circuit has identified the following "three principal situations in which equitable tolling is appropriate": (1) if a defendant has actively misled a plaintiff which causes non-compliance with an applicable limitations provision; (2) if a plaintiff has in some extraordinary way been prevented from asserting a right; or (3) if a plaintiff has timely asserted a right mistakenly in the wrong forum.  *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005); *see also Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 845 (3d Cir. 1992). However, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007).  Moreover, Plaintiffs will not receive the benefit of equitable tolling unless due diligence is exercised in pursing and preserving their claims.  *See Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)). Plaintiffs bear the burden of proving the application of such tolling.  *See Courtney v. LaSalle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997).  Plaintiffs have not attempted to meet this burden, and the record is devoid of any indication that the burden could be satisfied.

the text of the FLSA as enacted by Congress, or that it was otherwise promulgated arbitrarily and capriciously.  Any such as-applied challenges to 29 C.F.R. § 552.109 may be asserted by Plaintiffs as a defense to their currently pending enforcement actions to the extent it is otherwise permitted by law and applicable rules of court.

## IV.  <u>Conclusion</u>

For the reasons stated, Defendants' motion is granted, and Plaintiffs' claims are dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

An appropriate Order follows.

<u>/s/ *W. Scott Hardy*</u>
W. Scott Hardy
United States District Judge

Dated:  July 20, 2022

cc/ecf:  All counsel of record