BOYDEN GRAY & ASSOCIATES PLLC
801 17TH STREET NW, SUITE 350
WASHINGTON, DC 20006
(202) 955-0620

June 30, 2023

*By Electronic Filing*

Office of the Clerk
United States Court of Appeals
For the Third Circuit
21400 U.S. Courthouse
601 Market St.
Philadelphia, PA 19106-1790

**Re: Request for Supplemental Briefing in *Intra-National Home Care, LLC v. U.S. Department of Labor* (No. 22-2628)**

Dear Judges Phipps, McKee, and Rendell:

I am writing in response to the Court's June 21 order requesting a supplemental letter brief on (1) the relevance of four out-of-circuit cases discussing when a plaintiff's pre-enforcement APA claim "first accrue[s]" under 28 U.S.C. § 2401(a); (2) the government's "assertion that the only way the plaintiffs can assert their challenge to the regulation is as a defense in an enforcement action"; and (3) whether the parties' stipulation to dismiss two counts of their amended complaint without prejudice affects this Court's appellate jurisdiction.

Each point is addressed in turn below.

### I.

### A.

The four out-of-circuit decisions referenced in the Court's order are not relevant here for at least three reasons: (1) they are contrary to binding circuit precedent; (2) they contradict the plain text of Section 2401(a) and Supreme Court precedent interpreting that text; and (3) they are incompatible with the APA's "strong presumption" in favor of pre-enforcement review.

**1.** Section 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." Everyone agrees that Section 2401(a) ordinarily means what it

says: a "right of action" "accrues" to someone when their "claim or right to bring a civil action against the United States matures."[1] But—as the Eighth Circuit recently observed—the circuits are divided about whether to follow the statutory text when a plaintiff is pursuing a pre-enforcement challenge to final agency action under the APA.[2]

***i.*** On one side are the circuits that follow the plain text. This is the approach taken by this Circuit, which has held—unequivocally—that a "claim first accrues when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action."[3] Accordingly, this Court has concluded that the timeliness of a pre-enforcement suit brought under the APA can be measured by considering when that claim ripened—*i.e.*, when the plaintiff could first have brought suit.[4] The Sixth Circuit has likewise held that the argument that "a right of action under the APA accrues upon final agency action regardless of whether that action aggrieved the plaintiff … contradicts the text of the statute and Supreme Court precedent to boot."[5]

***ii.*** But "other circuits" have taken a different approach, "distinguish[ing] between as-applied and facial challenges under the APA."[6] These circuits—including the four referenced in the Court's order—hold that a plaintiff's "right of action for facial challenges to a final agency action accrues upon publication of the regulation, not when plaintiffs later … suffered injury" and could first sue.[7]

---

[1] *Crown Coat Front Co. v. United States*, 386 U.S. 503, 514 (1967); *accord Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) ("limitations period commences when" "the plaintiff can file suit and obtain relief" (cleaned up)).

[2] *North Dakota Retail Ass'n v. Bd. of Governors of the Fed. Rsrv. Sys.,* 55 F.4th 634, 641 (8th Cir. 2022); *Corner Post v. Bd. of Governors of the Fed. Rsrv. Sys.*, Brief of the Solicitor General in Opposition to Pet. for Cert. at 6–7 (circuits apply "different accrual rule[s]" in the context of APA pre-enforcement challenges).

[3] *United States v. Sams*, 521 F.2d 421, 429 (3d Cir. 1975) (quotations omitted).

[4] *Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Human Servs.*, 101 F.3d 939, 941–42 (3d Cir. 1996) (Alito, J.).

[5] *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 819 (6th Cir. 2015) (Sutton, J.).

[6] *North Dakota Retail Ass'n,* 55 F.4th at 640–41 (collecting cases).

[7] *Id.* (citing *Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997); *Hire Ord. Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012); *Citizens for Resp.*

\*

While the Supreme Court will doubtless need to resolve this circuit split at some point, *this* appeal is straightforward. The rule in this Circuit is that a plaintiff's claim does not accrue before they were "entitle[d] … to institute an action."[8] As explained in our briefs, Plaintiffs prevail under this standard.[9] That other courts have taken a different approach is irrelevant to the outcome here.

**2.** The Third and Sixth Circuits' approach is also the right one. Neither the government nor the four cases cited by the Court provide *any* textual argument for why Section 2401(a)'s meaning should change for "facial" APA challenges. As this Court has noted, out-of-circuit decisions that "ignore a textual analysis … and, instead, base their result on policies they find to underlie" the statute are not "persuasive"; instead, "the correct answer is dictated by the text of" the provision.[10] That text is straightforward: Section 2401(a)'s clock starts when the plaintiff's "right of action" "first accrues." This happens when the right of action "come[s] into existence as a claim that is legally enforceable," and not a moment before.[11]

The government, echoing the Eighth Circuit, is correct that this approach does not "not distinguish between as-applied and facial challenges."[12] But Section 2401(a) does not distinguish between them either. As the Supreme Court recently held, when a statute "never mentions [the government's favored] test," there is "no statutory basis to impose it."[13] "[A]rguments that ignore the operative text cannot be taken seriously."[14]

**3.** The four decisions referenced by the Court's order do not provide any policy justifications for their a-textual rule, but if one follows the citations back, each line

---

*& Ethics in Washington v. Fed. Election Comm'n*, 971 F.3d 340, 348 (D.C. Cir. 2020)); *accord Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1292 (11th Cir. 2015).

    [8] *Sams*, 521 F.2d at 429 (quotations omitted).

    [9] *See* Opening Br. At 24–28; Reply at 25–26.

    [10] *Eaves v. Cnty. of Cape May*, 239 F.3d 527, 532 (3d Cir. 2001).

    [11] *Accrue*, American Heritage Dictionary (5th ed. 2022). This is the historic understanding as well. *See* Kendrick, *(Un)limiting Administrative Review:* Wind River*, Section 2401(a), and the Right to Challenge Federal Agencies*, 103 Va. L. Rev. 157, 180–85 (2017).

    [12] *North Dakota Retail Ass'n*, 55 F.4th at 640.

    [13] *Sackett v. EPA ("Sackett II")*, 143 S. Ct. 1322, 1342 (2023).

    [14] *Id.* at 1344.

of cases has its origin in the Ninth Circuit's decision in *Wind River*. That case concluded that a judicial rewrite of the statute was necessary as a matter of policy to "strike[] the correct balance between the government's interest in finality and a challenger's interest in contesting an agency's alleged overreaching."[15]

Even if policy considerations could overcome the plain text (and they cannot), *Wind River* gets things exactly backwards. The administrative state "wields vast power and touches almost every aspect of daily life."[16] But with this great power comes great responsibility. Under the APA, agencies may not take final action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[17] Those harmed by the agency's final action can seek pre-enforcement judicial review to have it "set aside" if the agency failed in any of these duties.[18]

The Supreme Court has long guarded against executive branch machinations to avoid this accountability, holding that the APA's "'generous review provisions' must be given a 'hospitable' interpretation."[19] Indeed, the Court has "insisted" that the availability of pre-enforcement judicial review of executive action constitutes part of "'[t]he very essence of civil liberty.'"[20] Consequently, the Court imposes a "'strong presumption' in favor of judicial review" even to "statutes that may limit or preclude review"; this presumption can be overcome *only* by "clear and convincing indications … that Congress intended to bar review."[21]

Neither *Wind River* nor any of the four cases cited by the Court point to any such indications. On the contrary, the Supreme Court has "repeatedly recognized that Congress legislates against the 'standard rule that the limitations period commences when the plaintiff has a complete and present cause of action,'" *i.e.*, when the specific plaintiff can first go to court.[22] When Congress has wanted to foreclose pre-

---

[15] *Wind River Min. Corp. v. U.S*, 946 F.2d 710, 715 (9th Cir. 1991).

[16] *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,* 561 U.S. 477, 499 (2010).

[17] 5 U.S. Code § 706(2).

[18] 5 U.S. Code §§ 702 & 706(2); *Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967).

[19] *Abbott Lab'ys*, 387 U.S. at 140–141.

[20] *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986).

[21] *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016) (quoting *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1650–51 (2015)).

[22] *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 418 (2005) (quoting *Bay Area Laundry*, 522 U.S. at 201 (1997)).

enforcement review a set time after an agency regulation is published, it has said so explicitly.[23]

**B.**

Reversal is warranted even under the cases referenced by the Court. All four decisions allow a party to challenge the validity of a rule more than six years after publication if it the agency "seeks to apply" that rule against them.[24] As Plaintiffs explained in their Reply (at 19–22), while this challenge is "facial" (1) in the sense that it is a pre-enforcement challenge and (2) in the sense that it asks the Court to "set aside" the 2013 Rule, it is "as applied" in the sense that—much like in *Herr*— it was filed as a response to agency proceedings threatening to commence enforcement under an that rule.[25] All four of these cases use "as applied" in this last sense.[26] And the Department of Labor was unquestionably "seek[ing] to apply" the 2013 Rule against Plaintiffs when they filed suit.

---

[23] *Compare* 28 U.S.C. § 2401(a) (time runs "after the right of action first accrues"), *with* 16 U.S.C. § 7804(d)(1) (time runs after the regulation is "published in the Federal Register"); 12 U.S.C. § 1848 (time runs "after the entry of [agency's] order"); 15 U.S.C. § 80b-13(a) (similar); 21 U.S.C. § 348(g)(1) (similar); 39 U.S.C. § 3663 (similar); 49 U.S.C. §30161(a) (similar); 26 U.S.C. § 9041(a) (similar).

[24] *Citizens for Resp. & Ethics in Washington*, 971 F.3d at 348 (quoting *Weaver v. Fed. Motor Carrier Safety Admin.*, 744 F.3d 142, 145 (D.C. Cir. 2014)); *accord Dunn-McCampbell*, 112 F.3d at 1287; *PCI Gaming Auth.*, 801 F.3d at 1292; *Hire Order*, 698 F.3d at 170.

[25] *See* Amended Compl. ("A.C."), ECF No. 22, ¶¶ 13, 21, 82–84; *cf. Herr*, 803 F.3d at 812 ("The Herrs responded with this lawsuit" after "the U.S. Forest Service threatened to enforce a regulation" against them.).

[26] *Citizens for Resp. & Ethics in Washington*, 971 F.3d at 348 (Challenge was "as applied" because it arose after the agency "applied the Rule to the facts as it ascertained them."); *Dunn-McCampbell*, 112 F.3d at 1287 ("when an agency *applies* a rule, the limitations period running from the rule's publication will not bar a claimant from challenging the agency's statutory authority"); *PCI Gaming Auth.*, 801 F.3d at 1292 ("We have allowed an untimely challenge to a regulation on which an agency relies in taking final agency action on the ground that the regulation was outside the agency's statutory authority."); *Hire Order*, 698 F.3d at 170 (The running of a limitations period "does not foreclose subsequent examination of a rule where properly brought before this court *for review of further Commission action applying it.*") (quoting *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546 (D.C. Cir. 1958)).

## II.

The government advances two arguments for its assertion "that the only way the plaintiffs can assert their challenge to the regulation is as a defense in an enforcement action." It contends: (1) that once six years passes from the final action, the only way to challenge the validity of the regulation is to await enforcement; and (2) that, regardless of timing, the right to pre-enforcement review vanishes if (as here) the plaintiff is "already under investigation" or the government believes the party seeking review has engaged in "violative action."

Both arguments are wrong.

First, as explained above, the government's limitations argument is indefensible. "When a party first becomes aggrieved by a regulation that exceeds an agency's statutory authority more than six years after the regulation was promulgated, that party may challenge the regulation without waiting for enforcement proceedings."[27]

Second, on the scope of pre-enforcement review, the Supreme Court could hardly be clearer: the APA "repudiat[es] … the principle that efficiency of regulation conquers all" and provides recourse for regulated parties *before* agencies "drop the hammer."[28] So fundamental is pre-enforcement review that the Court does not "consider" the availability of defensive review to even constitute "a meaningful avenue of relief." Accordingly, those seeking pre-enforcement review need not "bet the farm … by taking the violative action before testing the validity of the law."[29]

The government's argument turns this upside down. It contends that if it has opened an investigation or determined for itself that the plaintiff has engaged in "violative action" then the action ceases to be "a 'pre-enforcement' challenge," and the plaintiff must simply await the hammer's blow of enforcement.

This argument is doubly flawed. As explained in our Reply (at 3–4) the government repeatedly waived this argument below, conceding that this case *is* "a pre-enforcement challenge."[30] The government's argument is also meritless, as explained in our Reply (at 5–13). Indeed, the government raised exactly this argument in the first *Sackett* case, contending that pre-enforcement review was

---

[27] *Herr*, 803 F.3d at 822 (emphasis omitted).

[28] *Sackett v. EPA ("Sackett I")*, 566 U.S. 120, 127, 130 (2012).

[29] *Free Enter. Fund.*, 561 U.S. at 490–91 (cleaned up).

[30] ECF No. 62 at 2, 10; ECF No. 45 at 2, 5.

unavailable there because "unlike the plaintiffs in *Free Enterprise Fund*, [the Sacketts] have already committed acts that have exposed them to potential enforcement action."[31] The Supreme Court unanimously rejected this contention, concluding that this did not "foreclose [pre-enforcement] review under" the APA.[32]

Plaintiffs are aware of no case that supports the government's argument. Nor is the government correct that declaratory relief interferes with its lawful enforcement discretion. If this were so, *all* pre-enforcement APA challenges would be improper since all such challenges seek to curtail the government's ability to do certain (unlawful) things. The government's enforcement discretion "is not interfered with" when it's "simply prohibited from doing an act which [it] had no legal right to do."[33]

### III.

In addition to Plaintiffs' APA claims, their Amended Complaint also sought declaratory relief that (1) they are not "employers" under the FLSA; and (2) that "in the alternative … Plaintiffs are joint employers along with" Pennsylvania and Ohio.[34] Plaintiffs dismissed these claims voluntarily without prejudice.[35] To avoid any doubt under *Erie County Retirees Association v. County of Erie*, Plaintiffs "hereby represent that they withdraw finally and with prejudice" both of these declaratory judgment claims.[36] As in *Erie*, this Court has jurisdiction.

---

[31] *Sackett I*, EPA Resp. Br. at 43.

[32] *Sackett I*, 566 U.S. at 127.

[33] *Ex parte Young*, 209 U.S. 123, 159 (1908).

[34] A.C. ¶¶ 156–61, 63.

[35] ECF No. 34

[36] 220 F.3d 193, 201 (3d Cir. 2000).

7

Dated: June 30, 2023                Respectfully submitted,

s/ Michael B. Buschbacher (DC Bar # 1048432).[37]
MICHAEL B. BUSCHBACHER
BOYDEN GRAY & ASSOCIATES, PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
(202) 955-0620
buschbacher@boydengrayassociates.com

BRUCE C. FOX
OBERMAYER, REBMAN,
MAXWELL & HIPPEL LLP
525 William Penn Place,
Suite 1710
Pittsburgh, PA 15219
(412) 566-1500
bruce.fox@obermayer.com

---

[37] This brief complies with the type-volume limitation of the Court's order because it contains 2,498 words.